ANTOINETTE HATCH vs. UNITED STATES CASUALTY
COMPANY.

Suffolk.   November 16, 1907. — January 1, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Insurance*, Accident.   *Words*, "Event causing the injury."

A policy of insurance provided for insurance "against loss . . . caused by bodily
injury effected exclusively by external, violent and accidental means, pro-
vided written notice of the injury, whether fatal or non-fatal . . . be given
by the insured or the beneficiary to the . . . company within ten days of the
event causing such injury," and stipulated for the payment of certain named
sums in case of "loss of life occurring within ninety days of the event causing
the injury," and in case of other losses, specifying that each must occur "within
ninety days from the event causing the injury." In an action by the beneficiary
under the policy, the declaration alleged that the insured on July 7 met with an
accident which was within the terms of the policy but "did not consider" it
"of any account," that from August 7 he was confined to his bed until August
11, when he died as a result of the accident, that he had given no notice to the
defendant but, within four days after his death, the plaintiff gave notice. The
defendant demurred. *Held*, that the requirement that the insurer should be
given notice within ten days of the event causing the injury is a condition pre-
cedent to the creation of liability under the policy, that the "event causing the
injury" was the accident, and that, therefore, the requisite notice was not given
and the demurrer must be sustained.

CONTRACT upon two policies of accident insurance. Writ in
the Superior Court for the county of Suffolk dated December 4,
1906.

The defendant demurred to the declaration, and the demurrer
was sustained by *Fox*, J., and the plaintiff appealed.

The material allegations of the declaration and portions of the
policies of insurance are stated in the opinion.

*A. J. Bailey*, (*D. R. Smith* with him,) for the plaintiff.

*R. Spring*, for the defendant.

HAMMOND, J.   This is an action brought by a beneficiary
upon two insurance policies.   The declaration contains two
counts, one on each policy; and the question upon each count
is whether upon the allegations therein contained it appears that
the notice required by the policy was seasonably given to the
defendant.   So far as material to this question the language is

the same in each of the policies and the allegations are the same in each count; and therefore in discussion we shall speak only of the first count.

The allegations of this count as to notice are as follows: "Item 4. The insured on July 7, 1906, met with an exclusively external and violent accident, namely, fell, but did not consider the accident of any account; from about August 7, 1906, he was confined to his bed, and on August 11, 1906, within ninety days after the fall, died, and immediately upon the death the plaintiff was informed and before that time had no knowledge or information that the death was effected exclusively by the fall; the death was not from any cause excepted in the policy. The plaintiff thereupon within four days after the death gave notice thereof to the defendant at its Home Office with the fullest information obtainable at the time and this was the only notice given up to that time to the company by the insured or the beneficiary; all other things to be done or observed as provided in the policy were so done or observed."

The policy is a long document. It recites that the defendant company, in consideration of a certain premium and of the warranties and agreements in the application " which is made a part hereof," insures Cyrus J. Hatch " against loss as hereinafter provided, caused by bodily injury effected exclusively by external, violent and accidental means, provided written notice of the injury, whether fatal or non-fatal, together with the fullest information obtainable at the time be given by the insured or the beneficiary to the home office of the company within ten days of the event causing such injury, to wit, (a) loss of life occurring within ninety days of the event causing the injury five thousand dollars; (b) loss of both eyes, meaning total and permanent blindness for life occurring within ninety days of the event causing the injury, the amount stipulated for loss of life." And thus the policy proceeds to enumerate several other kinds of loss insured against, such as that of an arm, hand or foot, stipulating in each case that the loss shall occur within " ninety days from the event causing the injury." It also enumerates as among the things insured against, (k) " total loss of time, meaning that period immediately following the event causing the injury during which the insured is thereby rendered, independently of any and

all other causes, wholly and continuously unable to transact each and every part of the duties pertaining to his occupation," twenty-five dollars a week, "not to exceed 104 consecutive weeks"; also "(l) partial loss of time," and "(m) total disability for life," occurring in each case "independently of any and all other causes" and "immediately following the event causing the injury." Then follows the statement that "if an injury, whether fatal or non-fatal, is caused or contributed to, primarily or secondarily, wholly or partly, directly or indirectly, by" any one of the many things or under certain conditions there enumerated in great detail, the liability of the company for any of the losses shall be only one half of the amount previously stipulated. These various causes or conditions of injury are not here set out, but upon reading them in detail it plainly appears that the word "injury" therein spoken of means injury to the person of the insured and nothing else. The same remark may be made of the word "injury" as used in the seventh paragraph of the policy. There are many other provisions in the policy, but, as they have no bearing on the question before us, they are not here set out.

What is the fair construction of this policy as to when the notice must be given? The defendant contends that the event causing the injury is the accident, and hence that the notice must be given within ten days of the accident. The plaintiff contends that there can be no event "causing the injury" until there is an injury, and that, the death of the insured being the injury, a notice given within ten days of the death is sufficient, and hence that there is no forfeiture.

It is to be premised that the giving of this notice is not a condition subsequent, as it has been sometimes called. It is not simply a part of the rule of procedure for the enforcement of the liability of the defendant, as are the provisions of the fifth paragraph in this same policy providing for proofs of loss. The promise to insure is not absolute but conditional. The condition is that the notice, whatever it may be and by whomsoever or whenever given, shall be given. It is a condition precedent to the creation of liability or to the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action.

It is further to be observed that we are not dealing with a case where it was impossible to give a notice, as where death is contemporaneous with the accident and the fact of death is not known nor can be known until more than ten days after the accident. In the case before us the insured lived more than a month after the accident, apparently in his usual health, for " he did not consider the accident of any account."

The insurance is " against loss . . . caused by bodily injury effected exclusively by external, violent and accidental means." It is perfectly plain that the injury here spoken of is injury to the person of the insured, and this construction is borne out by the subsequent provisions of the policy. Hence of course it is an injury suffered by the insured and not by the beneficiary. Moreover it is an injury caused by external, violent and accidental means. Any injury from other means or causes is not included. The injury is to be traceable exclusively to the accident to the person. If it is so traceable, then, no matter when the symptoms appeared or when they were recognized, it is covered by the policy; otherwise it is not. Every pain or result traceable to the accident, no matter how remote in time, is potentially caused at the time of the accident. Nothing is more familiar than this rule. It is constantly applied, especially in cases where damages are sought for injuries to the person. Within the contemplation of the law and by the construction of the contract the liability, when finally fixed, not only goes back to the accident, but also goes forward to the time, no matter how far in the future, when there is no longer any result traceable to it; and this is so, entirely irrespective of the question whether or not the insured knows or conjectures what the injury is or will finally develop to be. The event causing the injury is not the injury itself, but is the " external, violent and accidental means " by which the effect upon the body — the injury — is caused. We can see no other sensible construction of the language of the policy. We recognize the principle that in the case of an ambiguity in the meaning of an insurance policy complicated in its terms and drawn up by the insurer, every doubt is to be resolved in favor of the insured, to the end that the purpose of the contract, which is one of indemnity against loss, may be attained; but we must also recognize another principle equally imperative,

namely, that parties have the right to make their own contracts and, in the absence of fraud, or some other legal reason justifying a repudiation or breach, must be held bound by them. Hence where, as in the case before us, there is but one reasonable construction of the contract possible, no matter how hard that construction may seem to be in its result upon one or both of the parties, we are not at liberty to reject it but must expound the writing as it was made and as it stands.

In the case before us the event causing the injury occurred on July 7, 1906. The insured did not think he was hurt, and upon the allegations of the declaration it must be assumed that he was apparently in his usual health until about August 7 of the same year, when he was confined to his bed, dying four days afterward. He knew of his fall and must be taken to have been in full possession of his faculties and capable of giving the notice of it to the defendant within ten days thereafter. He had voluntarily become a party to the contract and had made himself liable to its conditions, including the one with reference to notice. He could have taken either one of two courses. He could have given the defendant seasonable notice and then it would have been bound by the results to him of the fall, or he could have acted upon his own idea of the fall and have taken the consequences himself. He could not take a third course, namely, give no notice and still hold the defendant. By failing to give notice under these circumstances, he in substance gave up his right to hold the defendant, so that at the time of his death the defendant was free from liability for this fall and its consequences.

After his death it was not in the power of the beneficiary to revive the right lost by the insured in his lifetime. While it is true that the contract provided that, in case of the death of the insured from any risk insured against, the indemnity was to be paid to her if surviving, still her rights as a beneficiary rest upon the contract, and the failure of the insured to fix the liability of the defendant by a notice was a failure to complete the contract, not only so far as concerned any benefit to him or his estate, but also so far as concerned any to her.

If it be said, as it sometimes is, that such a defence is purely technical, the answer (if one is needed) is that the provision for

notice is of the essence of the contract, that it is manifestly an important provision for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid. It is a provision which tends to the elucidation of the truth when a claim for indemnity is made. It was one to which the insured agreed, and it is not unreasonable. See for authorities bearing upon the question, *Moore* v. *Wildey Casualty Co.* 176 Mass. 418 ; *Swain* v. *Security Live Stock Ins. Co.* 165 Mass. 321 ; *Mandell* v. *Fidelity & Casualty Co.* 170 Mass. 173 ; *Paul* v. *Fidelity & Casualty Co.* 186 Mass. 413 ; *Gamble* v. *Accident Ins. Co.* 4 Ir. Rep. C. L. 204 ; *Patton* v. *Employers Liability Assurance Corp.* 20 L. R. (Ir.) 93 ; *Whalen* v. *Equitable Accident Co.* 99 Maine, 231; *Heywood* v. *Marine Accident Association,* 85 Maine, 289 ; *Travelers' Ins. Co.* v. *Nax,* 142 Fed. Rep. 653 (an instructive case).

Our attention has been called by the plaintiff to several cases upon which she relies in support of her contention, among which are the following : *McElroy* v. *John Hancock Ins. Co.* 88 Md. 137 ; *Phillips* v. *United States Benevolent Society,* 120 Mich. 142 ; *United States Casualty Co.* v. *Hanson,* 20 Colo. App. 393 ; *Trippe* v. *Provident Fund Society,* 140 N. Y. 23 ; *Rorick* v. *Railroad Officials' & Employees' Accident Association,* 55 C. C. A. 369 ; *S. C.* 119 Fed. Rep. 63 (a majority opinion the errors of which are well shown in the dissenting opinion by Gilbert, J.) ; *Hoffman* v. *Manufacturers' Accident Indemnity Co.* 56 Mo. App. 301 ; *Odd Fellows Fraternal Accident Association* v. *Earl,* 70 Fed. Rep. 16. We have examined them all. In many of them the language in the policy seems to differ materially from the language in the policy before us, and the result reached may have rested upon that difference. But, however that may be, so far as the decision in any of them is inconsistent with the decision in this case, we cannot follow them.

The result is that as to each count the demurrer is sustained.

*Judgment for the defendant.*