HENRY C. WATKINS *v.* UNITED STATES CASUALTY CO.*
SAME *v.* METROPOLITAN CASUALTY CO.

*(Jackson,* April Term, 1919.)

1. **INSURANCE.** Accident insurance. Notice of injury. **Knowledge of disability.**

Where two accident insurance policies provided that "written notice of an injury or of the beginning of any disability" must be given within forty days, and "within twenty-one days from the date of the accident or injury," respectively, an insured, who lost an eye by accident, but did not know the extent of the injury until forty-one days after the accident, complied with the terms of the policies, where he gave notice within forty and twenty-one days, respectively, from the time he acquired such knowledge. *(Post, pp.* 600, 601.)

Case cited and approved:  Hughes v. Central Accident Ins. Co., 222 Pa., 462.

Cases cited and distinguished:  Grant v. North American Casualty Co., 88 Minn., 397;   Hoffman v. Provident Indemnity Company, 56 Mo. App., 301;   Baumister v. Casualty Co., 124 Mo. App., 38; U. S. Casualty Co. v. Hanson, 20 Colo. App., 393;   Odd Fellows Fraternal Accident Association v. Earl, 70 Fed., 16;   Borick v. Railway Officials' & Employees' Accident Association, 119 Fed., 63; Jennings v. Brotherhood Accident Co., 44 Colo., 68;   Peele v. Provident Fund Society et al., 147 Ind., 543;   People's Accident Association v. Smith, 126 Pa., 317.

2. **INSURANCE.** Accident insurance. **Construction of policies.**

Provisions in accident insurance policies relative to the time within which notice of loss or injury must be made must be construed

*Authorities passing on the question as to nondevelopment of injury as affecting time of giving notice required by an accident insurance policy are collated in a note in 14 L. R. A. (N. S.), 503.

As to when strict compliance with requirement as to time of notice in accident or health policy is excuded, see notes in 18 L. R. A. (N. S.), 109;  27 L. R. A. (N. S.), 319.

according to the intention of the parties and against the insurer, where such construction does not violate the plain provisions of the contract. (*Post, pp.* 601-603.)

Cases cited and approved: Hatch v. U. S. Casualty Co., 197 Mass., 101.

3. **INSURANCE.** Accident insurance. Payment of premiums. Evidence.
In an action on an accident insurance policy, a claim by the insurer that premiums had not been paid could not be sustained, where it appeared that the insurer's local agent had extended credit to insured, paid the premium for him, and charged it to him. (*Post, pp.* 603, 604.)

4. **INSURANCE.** Accident insurance. ''Loss of entire sight.''
Under an accident insurance policy, there was "loss of the entire sight of one eye," where insured's eye became incurably sightless and useless, although a slight light perception still remained. (*Post, p.* 604.)

5. **INSURANCE.** Accident insurance. Notice of other insurance. Waiver.
In an action on an accident insurance policy, where the defense was interposed that insurer was only liable for a proportionate part of the loss because of insured's failure to give it notice that other insurance had been taken out, such notice *held* waived by failure to cancel the policy and collection of premiums after knowledge of the other insurance. (*Post, pp.* 604-606.)

Case cited and approved: Westchester Fire Ins. Co. v. McAdoo, 57 S. W., 409.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. L. H. PERES, Chancellor..

G. J. MCSPADDEN, for plaintiff.

WILSON & ARMSTRONG, for U. S. Casualty Co.

BROWN & ANDERSON, for Metropolitan Casualty Co.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

These suits were instituted by the complainant, Dr. Henry C. Watkins, against the defendant Casualty Companies to recover on two accident policies issued to him by the respective defendant companies for the loss of an eye.

The evidence in the two cases is identical. The cases were heard together, and we will dispose of both cases in this opinion.

On May 24, 1914, the United States Casualty Company issued a life and accident policy to the complainant in the principal sum of $7,500. Among other losses insured against the policy insured Dr. Watkins against the loss of the entire sight of one eye, irrecoverably, in the sum of $3,750.

The policy was issued for one year; was renewed each succeeding year, and was in force at the time of the accident resulting in the loss of his left eye. The policy contained the following provision:

"Written notice of an injury or of the beginning of any disability from sickness must be given by the insured or the beneficiary within forty days, to the company at its home office in New York City, or to a duly authorized agent of the company in the town, city or county in which the insured shall reside at the time of the giving of such notice, unless such notice shall be shown not to have been reasonably possible, in which

event such notice must be given as soon as may become reasonably possible. When claim is made for loss resulting from injury, proof of loss, under oath, must be furnished to the company at its home office in New York City within ninety days from the date of loss of life, or sight, or limb, or hand, or foot, and within ninety days from the date of the termination of loss of time or other disability, as defined herein.''

In May, 1913, the defendant, Metropolitan Casualty Insurance Company, issued to Dr. Watkins its policy, by which it agreed to pay $9,000 in case of death and $4,500 for the loss of one eye. This policy was renewed from year to year, and was in force when the injury complained of was received.

This policy contained the following clause:

''Clause 12. Written notice must be given the company at its home office in New York City, or to any of its duly authorized agents, of any accident or injury for which a claim is to made, with full particulars thereof and the full name and address of the insured, within twenty-one days from the date of the accident or injury, unless the giving of such notice within such time shall not be reasonably possible, in which event such notice must be so given as soon as reasonably possible.''

On January 17, 1917, Dr. Watkins entered his home and observed his wife standing with her back to him. He slipped up behind her and punched her in the ribs. It startled her, and she threw up her hand hitting him in the left eye, or rather, the doctor had on rimless glasses, and she hit the glasses and drove them against his eye. The pain for something like half an hour was excruciating and he testified that from that

time on he knew that there was something the matter with his eye. However, he did not think it was anything serious, and thought the trouble would eventually pass away. He had no idea that he would lose his eye. His wife examined his eye at the time of the accident, and discovered nothing wrong, except that the eye was a little red.

Dr. Watkins is a practicing physician, and did not quit work at all on account of this accident; had no idea of making any claim for weekly indemnity, and in fact did not make any. His eye did not become normal as he thought it would, and he probably became apprehensive that there was something serious about the injury, though he did not think that he had lost his eye. So that, on February 27th, forty-one days after the accident, he had Dr. Lewis, an eye specialist, to examine his eye, and learned for the first time that he had lost his eye. On the same day he gave both defendant companies notice.

Dr. Lewis testified that the injury was caused by a hemorrhage of the retina, produced by an injury to the eye. That upon an examination of the interior of the eye he found a degenerative change in the retina; that by degenerative change was meant the death of the tissues; the loss of their functioning powers; the substance of the eyeball had deteriorated; that the injury was not complete just after the accident; that the degeneration was not complete possibly for days and weeks that all hemorrhages do not cause degenerative changes; that it may be absorbed and the eye not injured.

Watkins v. U. S. Casualty Co.

It does not appear therefore just how soon after the accident the degeneration took place, but it is manifest that Dr. Watkins did not know that he had lost his eye until February 27, 1917, and immediately upon ascertaining that he had sustained an injury that was covered by his policies he gave the companies notice.

Dr. Lewis examined this eye again on November 13, 1918, and saw no change, and says he will never recover sight in this eye.

The chancellor dismissed both bills on the idea that the provisions in the respective policies as to notice had not been complied with.

Notice was given forty-one days after the accident. The United States Casualty Company policy provided that: "Written notice of an injury must be given by the insured to the company or its agent within forty days, unless such notice shall be shown not to have been reasonably possible, in which event such notice must be given as soon as may become reasonably possible."

In this case the accident occurred on January 17th. The policy provided no indemnity for such an accident, and the complainant had no claim against the company until he lost his eye. We will assume, for the sake of argument, that the vision in this eye became extinct on February 17th, a month after the accident, and at which time the company became liable to the complainant.

Under these facts has the complainant forty days from January 17th, or forty days from February 17th within which to give the notice?

The Complainant had no claim against the defendant until February 17th. Can this policy be construed to mean that, whenever the insured happens to an accident that may possibly produce an injury at some future time that is covered by the policy, the insured has to give notice within the prescribed time from the date of the accident?

Take, for example the facts in the case of *Hughes* v. *Central Accident Ins. Co.*, 222 Pa., 462, 77 Atl., 923. On December 14, 1904, Hughes, while riding on a passenger train got a cinder in his eye. Several weeks afterwards he realized there was some impairment of his vision. He went to Dr. Zigler an eye specialist, and was advised that a cataract was forming on his eye as a result of the cinder accident, the result being that he lost his vision. The insurance company was given notice on January 27, 1905.

In this particular case the policy provided for immediate notice, which the courts construe to be within a reasonable time. But suppose in that case the policy had provided for notice within ten days, would the complainant be barred because he did not notify the company within ten days after the accident, when as a matter of fact the injury for which the company was liable did not result for many days thereafter?

Do such provisions as the one under consideration mean that when you get a cinder in your eye you must give notice on the theory that the loss of sight may subsequently result, or that when you are pricked by a pin, or cut yourself slightly with a razor when shaving, that you must give notice because it is possible that, as a result of such accident, you may subsequently have

blood poisoning? Or does such provision mean that when you receive an injury, that the policy provides compensation for you must give the prescribed notice from the date of such injury?

We think the following authorities answer these questions:

The case of *Grant v. North American Casualty Co.,* 88 Minn., 397, 93 N. W., 312, involved a sick benefit claim under the terms of the policy as well as a death claim. The policy provided that: "Notice must be given the company of any illness with full particulars thereof, for which claims would be made, within ten days from the beginning of the illness, and that a failure to give such notice would release the company from all liability."

The insured was taken ill about January 1, 1902, called a physician on the 4th, and was obliged to stop work on January 11th. On the 15th of that month the company received a notice of his illness. On March 7th the insured died. The supreme court of Minnesota held the notice to be sufficient; that the notice was to be given within ten days of the time on which the insured became totally incapacitated from work, and not from the date the illness began as the policy literally provided.

In the case of *Hoffman v. Provident Indemnity Company,* 56 Mo. App., 301, the policy provided that notice should be given within ten days of the happening of the accident, and that a failure to give the notice should invalidate all claims under the policy. In its opinion the Missouri Court of Appeals stated the facts as to the accident and notice as follows:

"It appears from the evidence that the insured, on the last day of December, 1891, slipped from a wagon which he had been driving, and in the fall his head came in violent contact with a wedge-shaped piece of wood, which inflicted a long and deep cut on it just above one of his eyes. His injuries, thus received were quite severe. He lived thereafter for forty days, when he died from inflammatory rheumatism, which, in the opinion of the medical experts, was caused by the injury he had received. Neither the insured nor his attending physician gave the defendant company any notice of the accident or injury. Eight days after the death of the insured, his father, at the request of the plaintiff wrote the defendant company notifying it that the insured 'had received injuries about his head about six weeks ago and had been sick and disabled ever since and died February 10.' The defendant company, within five days thereafter, in acknowledging the receipt of the notice to the father, informed him 'that the policies issued by this company provide that no claim shall be made unless proper notification of the happening of any injury for which claim is made is given to the secretary of this company, mailed within ten days of the happening of the accident.' Some nineteen days after the death of the insured, the plaintiff herself gave the defendant a notice which was a substantial compliance with the requirements of said condition."

The company defended the suit upon the ground that it had not received the notice within the time required by the policy.

The Missouri Court of Appeals held that it was impossible for the beneficiary to give the notice within

ten days after the accident, for the reason that the insured did not die until forty days thereafter. Until his death she had no claim under the policy, and could not give notice of an event that had not taken place. Neither could the insured nor his physician, give the required notice, for such notice from them would have been premature. It was not the accident, but the death, that the company had insured against. The court held that the notice was sufficient.

In *Baumister* v. *Casualty Co.*, 124 Mo. App., 38, 101 S. W., 152, the policy contained the following stated provision:

"A written notice of any accident on which a claim may be based, given by the insured, his legal representative or beneficiary, and received by the company in Chicago within fifteen days from the date of the accident, together with such further proofs as may be required by the company, are conditions precedent to a recovery hereunder."

The court stated the facts in regard to the injury as follows:

"During the life of the policy, on November 27, 1902, the plaintiff, while firing a locomotive engine, accidently struck his left knee against the deck of the engine, whereby it was somewhat bruised and sprained. At the time of the accident plaintiff was in Missouri about twenty-five miles from Argentine, Kan., the end of his 'run.' He continued to fire his engine to Argentine, and when he got there his knee was stiff and swollen, and he consulted a surgeon, who applied a bandage. He thought his injury of little moment, and that he would be disabled for a few days only. With no inten-

tion of making any claim under his policy he quit his work and had his knee treated by the doctor. By the 5th of December he thought he had so far recovered as to be able to again go to work, and on December 5, 1902, he resumed the performance of his duties as a locomotive fireman. After working, his knee again began to give him trouble, and gradually grew worse until about the 3d of January, 1903, when he was again compelled to quit work. By that time the knee was badly swollen, sore, and stiff, and plaintiff was unable to walk. The evidence shows that from January 3, 1903, to the time of the trial he was wholly disabled, and that he is crippled for life.''

Among other defenses, the company set up that of lack of notice within the time required by the policy. Upon that point the court said:

''What we have written practically determines the sufficiency of the notice. As already stated, the injury to plaintiff, for which defendant was to indemnify him, was loss of time. The loss of time for which he claims did not begin until more than the number of days after the accident which were limited for notice had expired. Defendant's contention that the notice must be given within fifteen days after the accident practically would nullify the policy in all those cases where loss of time did not begin until after time for notice had expired. The true meaning of the clause as to notice is that it must be given within fifteen days after the loss of time began, which was January 5, 1903. In this interpretation the notice was in time.''

In *United States Casualty Co., v. Hanson,* 20 Colo. App., 393, 79 Pac., 176, it appeared that the insured, on

141 Tenn.—38

June 7, 1897, while supervising the construction af a mill, fell, and struck the base of his spine on a rock. At the time he thought his hurt a trivial matter, not worthy of being called to the attention of the insurance company. His lameness increased, and he suffered considerably. He thought he was suffering from rheumatism. From October, 1897, to February, 1898, he was being treated for rheumatism nearly all of the time. On February 4, 1898, he was examined by a Dr. Eskridge, who attributed his condition to the injury of June, 1897. Thereupon he gave notice to the insurance company. In a suit on the policy one of the defenses set up by the company was the failure to give the notice within the time required by the policy. On this point the court said:

"The policy provides that written notice shall be given appellant within ten days of the event causing the accident, with full particulars of such accident and injury for which claim is made.

"The accident in question occurred June 7, 1897, and the notice thereof was not given the company until February, 1898. It is said this is fatal to a recovery.

"The further facts are, appellee did not know, nor did the physicians and surgeons to whom he submitted himself for extended treatment, that the accident was the cause of his injuries until February 4, 1898, when the examination was made by Dr. Eskridge. Prior to that time, and even subsequently, physicians determined his condition to be due to rheumatism. There was no bad faith upon his part in failing to give the notice. Within the prescribed time after he knew that the accident was the cause of his injuries he notified appellant.

Within the authorities this was all that the policy reasonably required of him. This construction will not work a forfeiture, nor will it require an impossibility of appellee. Such a provision should receive a liberal and reasonable construction in favor of the beneficiaries under the policy.''

In the case of *Odd Fellows Fraternal Accident Association* v. *Earl*, 70 Fed., 16, 18, 21, 16 C. C. A., 596, 597, 601, 34 U. S. App., 285, the question here raised came before the United States Circuit Court of Appeals for the Seventh Circuit. That court in vigorous language applied the doctrine we here invoke. The court stated the facts of the case as follows:

''On July 23, 1892, Dr. D. G. Earl a physician of Lake Mills, Jefferson county, Wis., became a certificate holder in said association. Defendant in error, Mrs. Fanny K. Earl, then the wife and now the widow of Dr. Earl, is named in the certificate as beneficiary, and said instrument contains a promise by the association to pay her a specified sum of money in case of her husband's death as the result of accident. On August 4, 1892, Dr. Earl accidently stepped on a wire nail, receiving therefrom a puncture in his foot. The wound, though visible, was very slight. Dr. Earl kept on with his professional work, without any interruption whatever, for the fourteen days immediately following the accident. He then became sick; and, as the result of such accident, died of lockjaw on the 27th day of said month. Proofs of loss were tendered by Mrs. Earl in due time, but the association declined to pay, insisting that a notice to the association of the accident within ten days of the date thereof was a

condition precedent to liability, and that such notice had not been given. She sued on the certificate, and recovered judgment for $5,495.90 in the circuit court of the United States for the Western District of Wisconsin, and the association brings the record to this court by writ of error."

The court affirmed the judgment against the association upon this point, among other things, saying:

"On the other hand, and in this connection, the scope of the insurance, the benefit proposed in this certificate, is to be considered, for said words may be treated as merely intensive or precautionary, rather than be brought into conflict with what is otherwise the plain sense and purpose of the contract, by attributing to them a meaning which they do not necessarily contain. An accident by a means which is external, violent, and fortuitous, and which produces external visible mark upon the body, may for a time utterly escape the attention, or even the knowledge, of the person affected, and yet result eventually in mutilation or death. In an accident of the kind which killed Dr. Earl, there may be, for a time, as in his case, nothing whatever to suggest the perils insured against, namely, mutilation or death, as possible results. Yet such accidents are within the scope of this policy. A requirement that notice of such an accident must be given within ten days of its occurrence would be rather a cancellation of the policy with respect to a risk distinctly specified therein, than a rule of procedure to be followed by the certificate holder, an extinguishment of the insurance, rather than a limitation upon the method of ascertaining the loss to be compensated. If such a requirement be not void for repugnancy, within the rule illustrated by *In re*

*State Fire Ins. Co.,* 32 Law J. Ch., 300, it is so far un-
reasonable that we cannot put it into the contract by
implication. We cannot imply from the words in ques-
tion a significance which they do not express, when the
effect would be to annul part of the insurance
specified in the certificate as the subject-matter thereof.''

The case of *Rorick v. Railway Officials' & Employes'
Accident Association,* 119 Fed., 63, 55 C. C. A., 369,
also involves the same question. That case was decided
by the United States Circuit Court of Appeals for the
Ninth Circuit in 1902, and is frequently cited. The
first paragraph of the syllabus fairly sets forth the
the holding of the court upon this point. It is as
follows:

''An accident policy, insuring only against 'physical
bodily injury resulting in disability or death,' contained
a provision that 'notice of the accident caus-
the disability or death shall be given in writing
. . . within fifteen days from the date of the
accident causing the disability or death, . . . and
failure to give such notice within said time shall render
void all claims under this policy.' Held, that under
such policy the time for giving notice did not commence
to run until either disability or death resulted from an
injury, until which time there was no 'accident causing
disability or death,' which brought the case, within its
terms, and that where an insured received a blow on
the head which did not cause disability at the time, and
was regarded as a trivial injury, but which resulted a
few days later in both disability and death, a notice
given four days after his death and within ten days
after his disability was in time.''

The insured was injured at some time between the 11th and 14th days of March, 1900. He died on March 26, 1900. The company was not notified until four days after his death. Hence the notice was not within fifteen days of the accident, as the policy required. But the United States Circuit Court of Appeals held the notice to be sufficient.

In *Jennings* v. *Brotherhood Accident Co.*, 44 Colo. 68, 96 Pac., 982, 18 L. R. A., (N. S.), 109, 130 Am. St. Rep., 109, a sick benefit, alleged to be due under an insurance policy, was sued for. The policy provided for ten days' notice. About December 20th the insured became sick and quit work. In two or three days he went back to work. About January 1st he again got sick and sent for a doctor. Both the doctor and the insured thought the illness to be trivial, and gave no notice to the company. Both supposed the insured had a cold and that a few days' rest would restore his health. But as time went by the insured got no better, and about January 20th, the doctor came to the conclusion that his diagnosis was wrong, and saw that his patient was really ill. On January 21st the notice was sent to the company, informing it of the insured's disability, and giving notice of his claim for a sick benefit under the policy. The notice gave the beginning of the disability as January 1st. The company refused to pay the amount claimed upon the ground that the notice had not been given as the policy required. The Supreme Court of Colorado held, in that case, that while the notice had not been given within the ten days fixed by the policy, it had been given as soon as the insured learned of the real nature of his illness and for that

reason was in time; that the policy should not be so construed as to mean that the holder was required to give notice of his disability before he himself became aware of it.

In *Peele* v. *Provident Fund Society et al.*, 147 Ind., 543, 44 N. E., 661, 46 N. E, 990, the policy contained the following quoted provisions:

"Notice of any accidental injury for which claim is to be made under this certificate shall be given in writing, addressed to the president of the society at New York, with full particulars of the accident and injury, and failure to give such written notice within ten days from the date of either injury or death shall invalidate any and all claims under this certificate."

On the 17th of December, 1894, at his home near Terre Haute, the insured went into his bathroom to take a bath in a large porcelain bathtub. He requested his wife the beneficiary, to assist him after his bath was completed. She waited a sufficient length of time and went to the bathroom for that purpose. She found him lying in the water, and supposed him to be dead. Her outcries brought others to her assistance, and some of the attendants. thought they observed some feeble signs of life for an hour or more, after which there was no question as to his death. The insured's wife, the beneficiary, was prostrated by grief and shock. A coroner was sent for and made an investigation. The wife went to the burial in the city of Indianapolis and was unable by reason of her physical condition to return home or transact any business until December 24th. She did not learn of the coroner's report, nor of the fact that her husband's death was caused by ac-

cidental drowning, until December 28th. She gave notice of the accident and of the insured's death on the following January 2d. That was not within the ten days after the accident, as required by the policy, but was within ten days of the time when she learned that the death of the insured was caused by an accident. It was shown that an agent of the society saw an account of the insured's death in the newspapers, and thus acquired actual knowledge of the fact.

The Indiana Supreme Court held that the notice was sufficient in point of time, and, after a consideration of the decisions of other courts in similar cases, held that the policy only put upon the beneficiary the duty of giving the notice within ten days after she learned that the insured's death was caused by an accident.

It is further insisted that the evidence does not show just what date complainant lost his eye. The evidence shows that Dr. Watkins did not know that he had lost his eye until February 27, 1917, and we hold that he had forty and twenty-one days respectively, from that date within which to give the notice.

As stated in *People's Accident Association* v. *Smith,* 126 Pa., 317, 17 Atl., 605, 12 Am. St. Rep., 870: "It is our duty to give the policy in question a fair business-like, common-sense interpretation. It is in such sense that the parties to the contract probably understood it. The plaintiff was not claiming for weekly benefits. Had he done so, there would have been more force in the defendant's position that he should have given notice of the accident immediately after its occurrence on September 4th. His claim, however, was for the loss of his eye, and it is difficult to see how he could with

any porpriety make such a claim until he had actually lost it or it had become clear that he would lose it. How could he have truthfully made such a claim on the 5th of September? And had he done so and his eyesight been restored, the probability is the defendant company would have criticized his claim even more closely than it has done now.''

It is too well settled to require citation of authorites that such provisions must be construed according to the intention and understanding of the parties, and that they must be construed against the insurer where such construction does not violate the plain provisions of the contract. If the company desires to incorporate in its policy a plain provision to the effect that upon the happening of an accident that may, by some possibility, result in an injury covered by the policy notice must be given within a specified period from the date of the accident, it has the right to do so, but we think the clause in this policy bears no such construction.

In the Metropolitan policy the provision is that: ''Written notice must be given of any accident or injury for which a claim is to be made, within twenty-one days, unless the giving of such notice within such time shall not be reasonably possible, in which event such notice must be so given as soon as reasonably possible.''

Dr. Watkins had no claim until he lost his eye; therefore he could not make a claim at the time of the accident, for he had not lost his eye at that time. He does not know when he lost his eye, but his first knowledge of the fact was on February 27th, at which time he gave the notice.

The provision of this policy clearly negatives the idea that he was to give notice within twenty-one days after the accident, if the injury, for which there was liability, had not occurred at that time for the reason that he had no claim against the company.

We think the notice provision of the United States Casualty Company policy, properly construed, means just what the notice provision of the Metropolitan Casualty Insurance Company policy says.

Counsel for defendants rely on *Hatch v. United States Casualty Co.,* 197 Mass., 101, 83 N. E., 398, 14 L. R. A. (N. S.), 503, 125 Am. St. Rep., 332, 14 Ann. Cas., 290, in support of their position.

In that case the insured met with a fall on July 7, 1906, but did not consider the accident of any consequence. From August 7th to August 11th he was confined to his bed, and on the latter date died. The notice provision in the policy was as follows:

"Provided written notice of the injury, whether fatal or nonfatal, be given by the insured or the beneficiary to the home office of the company within ten days of the event causing such injury."

That case is distinguishable from the case at bar. The provision in plain terms states that he is not to have ten days from the date of the injury, but that he must give notice within ten days of the event causing the injury, which was the accident on July 7th. The provision "whether fatal or nonfatal" negatives the idea that he has ten days after the injury, or in case of death that the administrator has ten days after the injury; and, in conjunction with the remainder of the clause, makes it plain that the notice must be given

within ten days after the event (accident) causing the injury.

The employer's liability cases, relied on by the defendants, are not at all in point.

The law does not require impossibilities; and, while it appears that Dr. Watkins lost his eye prior to February 27th, he did not have knowledge of the fact until that date, and under all of the authorities notice, within the prescribed period, from the day he obtains knowledge of the injury is sufficient.

It is next insisted by the defendant, United States Casualty Company, that the complainant cannot recover against it because the premium had not been paid on the policy, and that the policy was not in force at the time of the injury.

This position is not supported by the evidence. We find that the premium was actually paid to the company by the local agents for the insured, and was so occepted by it; and, at the time of the accident, the local agents had no claim against the company for a return of this premium.

Dr. Watkins testified that he had an agreement with the local agents, which had been pursued since he began doing business with them, by which he was to pay the premiums at his convenience. There is no escape from the conclusion that the local agents extended this credit to Dr. Watkins, and paid the premium for him and charged it to him.

Dr. Watkins testifies that this local agency dissolved partnership, and that one of the members, Mr. Mathews, told him that in dividing up the assets of the firm that

the account against him (Watkins) had been taken over by him as a part of his assets.

The next defense interposed by the United States Casualty Company is that the facts do not show ''loss of the entire sight of one eye'' as required by the policy.

Dr. Watkins testifies that: ''The sight is gone. I am conscious of light getting into the eye, and occasionally an object will flash without me being able to tell what it is. If I shut my right eye and hold my hand in front of me I cannot see it.''

Dr. Lewis testifies that the eye is absolutely useless; no power to see anything directly in front from that eye to read, to see, to recognize a person, or do any kind of work. There is a light perception which comes in from the side, but that cannot be used in any kind of employment. He further testifies that the degeneration is complete, and that there is no chance for any improvement.

Dr. Savage testifies that the eye, for all practical purposes, is blind, and that there is no prospective cure.

The complainant has entirely lost sight in the eye, so far as usefulness goes, and we think this is the obvious meaning of and falls within the intent and spirit of the contract.

The defendant, United States Casualty Company, interposed several other defenses which counsel omit in summoning up its defenses, and we presume these omitted defenses have been abandoned. In any event we find no merit in them.

The Metropolitan Company makes the further defense that when the complainant took out the policy in the United States Casualty Company it failed to give it

notice thereof, and that, therefore, under the provisions of its policy, it is only liable for a certain proportionate part as provided for in the policy.

We find that the company has waived this notice. In July, 1915, Dr. Watkins stuck a thorn in his finger, and made a claim against the Metropolitan Company under this identical policy for the loss. He testifies that he submitted written proof of loss to the company, in which he fully set forth all the policies that he had, including the one in the United States Casualty Company, which the Metropolitan Company is now complaining of, and that in that way he gave notice in writing of the United States Casualty Company's policy to the Metropolitan Company.

Written notice was given to the Metropolitan Casualty Company by Dr. Watkins to produce at the hearing and file as evidence proofs of the aforesaid claim, but the Metropolitan Casualty Company failed to produce and file said written proofs, as it was notified to do. The Metropolitan Casualty Company not only paid the loss, but it failed to cancel the policy, and thereafter collected the premiums on same as they became due.

This proposition is supported by *Westchester Fire Ins. Co.* v. *McAdoo* (Ch. App.), 57 S. W., 409, and the authorities therein cited.

The record shows that Dr. Watkins is one of the prominent physicians of Memphis, a man of high standing; that he has been carrying these policies for several years and keeping his premiums paid thereon; there is not a suggestion that he has not acted in the utmost good faith in this matter in any particular. When he

became aware of an injury for which these policies indemnified him, he gave the companies immediate notice. There is no question but that he has for all time lost his eye. Neither is there any doubt but that he lost it as a result of an external accident. The very thing which he had been honestly trying to protect himself against and for which he had been expending his money happened, and to defeat which these companies have interposed the defenses which we have discussed herein.

Decrees will be drawn, reversing the chancellor, and awarding to the complainant the sums sued for, with interest.