## A. J. BROWN v. TRAVELERS INS. CO.

Western Section.   June 20, 1925.

Certiorari denied by Supreme Court December 12, 1925.

1. **Appeal and error.  Assignment of error must be specific.**
   In a suit to recover on an accident policy an assignment of error that "the judgment of the court is contrary to the law and contrary to the evidence" is too vague and indefinite and will not be considered.

2. **Insurance.  Accident insurance.  Failure to give notice of accident as required by the policy will bar a recovery on the policy.**
   In an action to recover for total disability on an accident policy which contained a provision that written notice of the accident must be given to the company or its agent within 20 days after the accident and if not possible within that time, then as soon as possible, held a failure to give notice as required by the provisions of the policy will bar a recovery.

3. **Insurance.  Accident insurance.  Evidence held not to bring policy holder within the provision that notice should be given as soon as possible.**
   In an action to recover on an accident policy where holder was injured by being overheated and falling on a lawn mower and received injuries which caused his death later and notice was not given to the company for over ten months and the policy holder sought to avoid the necessity of giving notice on the ground that he did not sooner know it was an injury coming under the policy, held the evidence showed that parties did know of injury sooner and their failure to give notice barred the action.

4. **Appeal and error.  On appeal evidence is weighed in the most favorable light to the verdict.**
   It is the duty of the appellate court to weigh the evidence in the most favorable light to the verdict below.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Affirmed.

Edgar Webster, of Memphis, for plaintiff in error.

G. T. Fitzhugh, of Memphis, for defendant in error.

OWEN, J.   A. J. Brown instituted this suit against the defendant insurance company on an accident insurance policy alleging total disability.   During the pendency of the suit A. J. Brown died, and the cause was revived in the name of his widow, Mrs. Mary H. Brown, who is his executrix and who is also the beneficiary in said insurance policy.

Hereafter, in this opinion, A. J. Brown and his widow will be referred to as plaintiff, and the Travelers Insurance Company as defendant.

On May 12, 1922, the defendant issued an accident insurance policy to Albert J. Brown.   By the terms of the policy the company

agreed to pay him $25 per week during his total disability for any injury falling within the terms of the policy. The policy insured against disability resulting from bodily injury effected directly and independently of all other causes through external, violent and accidental means."

The plaintiff alleged that he was injured June 10, 1922. It appears that there have been two trials of this cause, the first resulted in a verdict in favor of the plaintiff, he recovering for sixty-one weeks, or a total of $1525, this being the time which elapsed between the alleged injury and the death of the insured.

On motion made by the defendant for a new trial, the verdict of the jury was set aside on the ground that it was contrary to the weight and preponderance of the testimony. At the second trial, at the close of plaintiff's proof, the court sustained defendant's motion for a directed verdict, and instructed the jury to return a verdict in favor of the defendant on the ground that the insured had not complied with the terms of the policy in that a notice of the injury was not given to the defendant within twenty days, after the injury which is the time provided within the policy. The policy contains the following provisions: "4. Written notice of the injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury.

In the event of accidental death, immediate notice thereof must be given to the company.

"5. Such notice given by or on behalf of the insured or beneficiary, as the case may be, to the company, at 700 Main Street, Hartford, Connecticut, or to any authorized agent of the Company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy, shall not invalidate any claim, if it shall be shown not to have been reasonably possible to give such notice, and that notice was given as soon as was reasonably possible."

The plaintiff's suit was dismissed. She seasonably filed her motion for a new trial, which was overruled by the trial judge, proper exceptions taken thereto and an appeal was prayed and granted, the same was perfected, a proper bill of exceptions has been signed and filed and the plaintiff has assigned seven errors in this court.

The first error is, "the judgment of the court is contrary to the law and contrary to the evidence."

This assignment is overruled and disallowed because it is too vague and indefinite. It is not a valid assignment. The second assignment is, "the court erred in sustaining the motion of the defendant to direct a verdict for the defendant." The other five assignments assert the same error as the second assignment, but

giving in each one a different reason why the court committed error.

One of the pleas of the defendant was that the written notice required by the policy had not been furnished defendant with in the time specified. While the injury complained of was on June 10, 1922, notice was not given in writing until March 22, 1923. The plaintiff filed a replication to this plea of want of notice and admitted that he had not given it as required, but assigned as a reason for failing to do so, that he was injured in such manner and to such an extent that it was not reasonably possible for him to attend to the matter within twenty days, and that later he was too incapacitated physically and mentally to give notice, and that when he did partially recover he called for blanks upon which to make his claim and he was examined by the defendant's physician and that by giving the blanks to the insured and having him submit to the insurers' physician, that this was a waiver of failure to give notice within the ten months after the alleged accident. The defendant insist that the blanks furnished the insured contained the following stipulation: "By furnishing this blank and investigating the claim, the company shall not be held to admit validity of any claim or waive the breach of any condition of the policy." This was signed by the insured, Albert J. Brown.

It is the insistence of the plaintiff that whether the insured gave notice as soon as it was reasonably possible is a question for the jury. And until the insured knows what his ailment is, and is reasonably assured that such ailment or disability grows out of an accident which is covered by the terms of the policy, he is under no duty to give-notice of such injury. Watkins v. U. S. Casualty Co., 141 Tenn., 583.

In regard to the injury sustained by the insured the record shows that he was mowing his yard with a lawn mower on June 10, 1922: that it was a very hot, sultry day; that he became very hot; that the lawn mower struck some object in the grass and that he fell and was lying down across the lawn mower, when a gentleman by the name of L. G. Aldrich, who occupied a portion of the same house with the insured came home; that it was rather late in the afternoon and Mr. Aldrich discovered the insured lying across the lawn mower. He helped him into his room. The insured testified that at the time he became overheated, he turned pale, prespired profusely, became dizzy, and partially blind, and fell across the lawn mower which he was pushing, and by falling on the lawn mower he caused a blue spot to form on his left chest; that this caused him to suffer acute dilatation of the heart, and his heart valve was ruptured, or a heart lesion resulted, from which injury he was immediately disabled, and never did recover, dying during the month of August, 1923.

**The insured's** wife worked in the office of Dr. John T. Moss, a practicing physician in Memphis, Tennessee. The insurer lived at 650 Union Avenue. That an hour after the insured became overheated, and after he was rescued by Mr. Aldrich, the insured left his home and went to the office of Dr. Moss in the Lee Building at the corner of Main and Madison Streets, in Memphis, Tennessee. Dr. Moss examined the insured that afternoon. It appears that the insured was at Dr. Moss's office again on June 20th, and during the ten days between the 10th, and 20th, he called his wife from his home over the telephone, his wife being at Dr. Moss, office; that he came uptown on Labor Day to view the Labor parade; that in September, 1922, the insured went alone to one of the railway stations in Memphis and took a train and made a visit unaccompanied to the State of Mississippi where he visited relatives and friends, and where he remained until November 12th, which would be five months and two days after the accident; that he returned to Memphis alone, and he went to his home from the Railway Station. In the early part of March, 1923, he again visited the State of Mississippi unaccompained. It appears that he was treated in a sanatorium during the months of September and October, 1922, for tuberculosis. Dr. Moss, who examined the insured an hour or so after his injury on June 10, 1922, testified that he advised the insured that he must keep quiet, and stay in bed; that he had a very serious heart trouble. We quote from Dr. Moss' testimony, as follows: "Q. Doctor, did you find his mental condition good? A. What is that? Q. Mental condition? A. Yes, sir, I think so. Q. Fairly good? A. Just about as it had been all along. Q. In your opinion was he able physically and mentally to undertake any business, or able to make out a proof of claim to the Travelers' Insurance Company of the nature of his accident? A. I should think he could have. Q. That he could have? A. Yes. Q. Doctor Moss, reviewing the case from start to finish, taking into consideration his strength and vitality, tell that jury in your opinion whether the trouble he had was caused by the fall, or not? A. I think that the fall precipitated his trouble. I think that this man became overheated in the act of pushing a lawn mower on a hot day, on a hot, sultry day, and probably in that overheated and possibly exausted condition, slipped and fell. At that time I think he had an injury to the heart valve, and I think all of his trouble started at that point."

Plaintiff's wife testified that she was the agent and representive of her husband; knew about the policy which was in her possession: that the insured told her all about the accident the morning afterward, and that she had as much information about the accident the day after it happened as she had on the day of the trial.

Mrs. Brown further testified that she was familiar with the terms of the policy requiring notice, and she testified that she tried to give a verbal notice to a black-haired boy who was connected in some way with the insurance firm of Marx and Bensdorf, who were the agents of the defendant Insurance Company, and that later she tried to give a notice to another person whose name she dosen't know, but who was a collector for Marx and Bensdorf. She further testified that a man told her in November, 1922 "to wake up;" that the policy covered sun-stroke and she should go ahead and give notice, but she didn't pay any attention to this suggestion; that she didn't think that the policy covered sun-stroke and she was still under the impression that he had a sun-stroke until May 16, 1923, when she learned that he had a ruptured heart valve. That that was the first time that Dr. Moss told her that he had a ruptured heart valve. Mrs. Brown further testified that when she gave the first verbal notice to anybody who had any authority with the insurer, her attention was immediately called to the fact that the notice had not been given in time. However, she requested blanks and these were furnished at her request, but she and her husband read the stipulation on the blanks, that by furnishing blanks and investigating claim, that the company did not admit the validity thereof or waive any provision of the policy, and that after reading it the insured signed the same and returned it to the company. It appears that the defendant tendered the plaintiff the premium of $30 on the ground that there was a breach of warranty as shown by the answers made to certain questions in the application, it appears the application was made a part of the contract or policy of insurance. The tender was declined, but, as we view this case, this tender and alleged breach of warranty, etc., are not material. This law suit is determined upon the one question, and that is whether or not the plaintiff was excused from giving the notice within twenty days after the accident, as provided by conditions found in the policy.

Did the insured know what his ailment was, and was he mentally and physically able to give the notice? He told Mr. Aldrich what had happened on the same afternoon the accident happened; he told Dr. Moss on the same afternoon the accident happened; he told his wife the next day, and we are of opinion that both knew as much within a day after the accident as they knew several months after it happened, and when they gave the notice. Counsel for the defendant relies on the following propositions of law:

"First: Compliance with the provision in the policy requiring written notice of the injury claimed to have been caused by accidental means within twenty days after the date of the accident and if not possible to give such notice within that time to give same as soon as is reasonably possible to do so after the accident is a condition

precedent to any recovery, such requirement being reasonable and necessary in order to enable the insurer to investigate the facts and circumstances surrounding the alleged accident and to protect itself against fraudulent claims. Phenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn., 438; Hatch v. U. S. Casualty Co., 197 Mass. 101, 83 N. E. 398 (cited with approval by our Supreme Court in the above case), and also in Watkins v. U. S. Casualty Co., 141 Tenn., 583; Travelers Ins. Co. v. Nax, 142 Fed., 653; Heffner v. Fidelity & Casualty Co., 160 S. W., 330.

"Second: Where the undisputed evidence is that notice was not given within the time required by the policy it is a question of law for the court. Wildman Mfg. Co. v. Davenport Hoisery Mills, 147 Tenn., 551-560; Foster v. Fidelity & Casualty Co., (Wis.), 40 L. R. A., 833. Baker v. German Fire Ins. Co. 124 Ind., 490; Hatch v. U. S. Casualty Co., 83 N. E., 398; Cochran v. Mass. Bonding & Ins. Co. (Supreme Ct. of Colo., Nov. 10, 1924, Opinion handed in with record); Caldwell v. Va. Fire & Marine Ins. Co. (Tenn.), 139 S. W., 698; National Paper Box Co. v. Aetna Life Ins. Co., 156 S. W., 740.

"Third: A delay of ten months as in the instant case in giving an accident insurance company notice of an alleged accident and injury is unreasonable per se. Heffner v. Fidelity & Casualty Co., 160 S. W., 330, and other cases, supra; Underwood Veneer Co. v. London Guaranty & Accident Co. (Wis.), 75 N. W., 996; Dear Trail Consolidated Mining Co. v. Maryland Cas. Co. (Wash.), 67 L. R. A., 275.

"Fourth: Where a default has already taken place in the matter of giving notice, that is to say, where the insured has already failed to give such notice within a reasonable time, the furnishing of blanks by the insurer does not amount to an express waiver or constitute an absolute estoppel and will not preclude the insurer from relying on the failure of the insured to comply with the provision of the policy as to giving of notice of the accident and injury. Sweeney v. Travelers Ins. Co., 165 N. W., 775; Chandler v. John Hancock Mut. Life Ins. Co., 167 S. W., 1162."

In passing upon the motion for a directed verdict, and in sustaining the same, Judge A. B. Pittman complimented learned counsel for both parties very highly in the able manner in which each had presented his views of the case, and we will state here that the same counsel have presented this case very ably at the bar, and each has furnished a splendid brief in support of his clients contentions.

We quote from Judge Pittman's opinion in sustaining the motion for a directed verdict, as follows:

"I am satisfied that there is no merit in the case, Mr. Webster, for various reasons. Every ground upon which you propose to stand requires the greatest strength of imagination to even permit it to go to the jury. I am satisfied that the failure to give this notice is fatal, whether the other grounds are well taken, or not. There is one very plain violation there, and that is the answer to one of those questions that said that he had never been advised to be operated on. They all admit that he gave that answer, and the evidence is conclusive that he was advised to do it. As to whether that would be material, or not, I do not know, and would not be prepared now to hold that that would be sufficient to defeat the law suit. The case is just honey comed with the fact that in order to get along on behalf of the plaintiff, there would have to be the greatest credulity exercised on the part of the jury. But I think that the failure to give this notice is fatal. I do not believe, under the authorities that, months after this man received this fall, that bill collectors and other people with whom Mrs. Brown talked, could waive the rights of the defendant under this policy. The fact is, and this is a cogent circumstance in my mind in this case on the question of notice; away back as far as November, she said that he realized then that there was an accident for which this company might be liable, and she told it to some bill collector, some black headed boy. If then they knew that, they should have taken immediate steps to do it in a right way, instead of talking to these bill collectors who were coming out there, not to collect for the insurance."

We are of opinion that the case of Watkins v. U. S. Casualty Company, supra, is easily distinguished from the instant case. In that case Dr. Watkins, the plaintiff, received an injury to his eye. In fact the injury caused him to lose his sight in the eye injured, but he thought it was only a temporary pain and he did not realize that it was a serious injury until about forty days after the injury. He immediately gave the notice, after he was advised by an eye specialist that his eyesight was gone, and as soon as it was reasonably possible for him to do so after the accident.

We are of opinion that under the undisputed evidence in the instance case that notice was not given within the time required by the policy, and the written notice not having been given within twenty days after the date of the accident, the question presented by the record is whether, as a matter of law, there is sufficient evidence that it was not reasonably possible to give the notice within that time, and that it was given as soon as reasonably possible.

Dr. Moss shows that the plaintiff was physically and mentally able to send such a written notice promptly, and all the remaining proof as to the insured's condition shows that the notice could have

420        TENNESSEE APPEAL, VOL. I.

been given within twenty days. The insured thought that he had a sun-stroke is evidently why the notice was not given immediately after the insured became overheated.

Taking Mrs. Brown's testimony, who was active in behalf of her husband, who apparently is a woman well versed in business affairs, who has been the assistant to a practicing physician in his office for a number of years, and considering the same and weighing it in its most favorable light, which it is our duty to do, she testifies that she knew that he was suffering from this accident and that the company might be liable, she knew this in November, 1922, and that she told of the accident to some bill collector representing the defendant. This did not comply with the written notice. She was well acquainted with the terms of the policy. The insured was an insurance agent representing a life insurance company, and the terms of his accident insurance policy were not foreign to him.

It results that we find no error in the judgment of the lower court, and the assignments of error are overruled.

We have made a careful examination of many of the authorities cited both by plaintiff and defendant, and we are constrained to overrule all of the assignments of error and affirm the judgment of the lower court. The plaintiff will pay the costs of the appeal, for which execution will issue.

Heiskell and Clark, JJ., concur.