## M. D. ANDERSON v. TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA.

Middle Section.   July 2, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Avery Handly, of Nashville, for appellant.
Levine & Levine, of Nashville, for appellee.

DeWITT, J. The question presented is whether or not the complainant is entitled to recover upon an accident policy although he did not within thirty days from the date of his injury give the notice to the defendant required in its Constitution and made a part of the contract—, as follows:

"Any member in good standing meeting with any accident, as described in this article, must notify the National Secretary in writing within thirty days, giving full particulars of same and name of attending physician. In case of death the beneficiary shall give such notice within thirty days. In case of failure to notify, except because of unconsciousness or physical inability, the member, or his beneficiary in case of death, shall forfeit all rights to insurance benefits."

The defendant is a mutual benefit association, engaged among other things in issuing policies or certificates of insurance against injuries or death from accidents. The complainant, a merchant and successful business man, held a certificate entitling him to payment by said Association of the sum of $1250 in the event of his accidental loss of an eye. On September 27, 1926, while driving a large nail he was injured by the nail flying and striking him in the right eye. No notice of the accident and injury was given to the defendant Association until December 8, 1926, when complainant sent a letter to the National Secretary, giving the particulars or the accident and injury and setting forth the causes of his delay. The Association stood upon the strict provision of its contract and declined to pay. Much correspondence and negotiation ensued during the succeeding months, but the Association did not recede from its denial of liability. The complainant thereupon filed the bill in this cause to recover the sum of $1250 and interest and a penalty of 25% on the ground of wilful failure or refusal to pay in bad faith. Upon the hearing the Chancellor reviewed the facts in a

lucid opinion and awarded a recovery of $1250 and interest, without penalty, upon his conclusion "that the complainant was suffering with such physical inability as excused him from giving the written notice of the accident within thirty days from the date that it occurred, and that the notice he gave on December 8, 1926, was a sufficient compliance with the provision of the Constitution quoted."

In finding the facts we concur entirely with the Chancellor. In 1926 the complainant, being physically run down and worn out, discontinued all attention to his business affairs and engaged in horseback riding and playing golf in order to regain his health. On September 27, 1926, he sustained the injury from the nail while assisting a carpenter in the construction of a stable for a fine saddle horse he had purchased. This injury occurred about 2 o'clock in the afternoon and during that same afternoon he received medical treatment from a specialist, Dr. Warner. From September 27th to December 1, 1926, complainant was under the immediate care of Doctor Warner. He was totally disabled from September 27, 1926 until November 1, 1926, during which time he was visited at his home by Dr. Warner. During November Doctor Warner treated him at his office. He was partially disabled during that month. On December 8, 1926, he went to New York and consulted a specialist about the condition of his eye.

The injury was from the beginning very painful and it not only caused the plaintiff to be confined to his home until November 1st, but also very often to his bed. The physician had to give him narcotics at times to relieve him from pain. His mind was concentrated upon his physical condition and sufferings and he was under continual anxiety, for at some time, not exactly defined, but not long after the accident, he was informed by Dr. W. Warner of the possibility of his loss of the eye. This continued as a matter of uncertainty until November 17, 1926, when it was definitely determined that the cataract over his eye was a result of the injury. The rupture extended from the cornea and there was also a rupture of the lens capsules directly beneath it. The injury resulted finally in a corneal scar and traumatic cataract of the right eye.

During all this period of time plaintiff did not go to his place of business or given any attention to his business affairs, though his sons would occasionally, when visiting him at his home, refer to his business affairs in a casual way. He did not try to transact any business. He was worried and in mental distress about the loss of his eye and the possibility that he might become blind for life. As soon as his mind was relieved as to his fear that he might become blind he began to think about his business affairs and notified the Association of the injury, by the letter of December 8, 1926.

He had another policy of accident insurance which was kept in the safe at his place of business but he did not personally attend to filing a claim under that policy for that was done by his sons. The policy herein sued on was in complainant's box in the bank.

We fully concur with the Chancellor in his findings as follows:

"He did not attend or attempt to attend to any business affairs until after December 1, 1926, when he was reasonably assured that he would not lose his sight entirely, and it is fairly inferable from the evidence that his mind did not rest easy on this matter until after his consultation with Dr. Knapp in New York. Within eight days after he began to give thought to his business affairs, and on December 8, 1926, he notified the defendant company of the accident. It is true in his correspondence with the Company he used the expression 'the writer overlooked the fact that he had a policy with your company' and 'I forgot it completely that I was carrying this policy with you;' however, it is perfectly plain from the proof that he overlooked the fact and forgot that he was carrying a policy because of confinement, severe pain and the fact his mind was so mentally disturbed with the thought that he might lose his sight from the accident. This is evident from the fact that he gave as an excuse in his letters for not giving the notice, his confinement intense pain and mental worry over his physical condition.

"The question then recurs, what is the meaning of the sentence 'In case of failure to notify except because of unconsciousness or physical inability,' and whether the proof discloses that the complainant is within the exception. The word 'unconsciousness' is broader and has a different meaning from 'physical inability.' A person may be injured and unconscious for more than a period of thirty days, in which event he would be excused on account of unconsciousness, from giving the notice. It is apparent that the words 'physical inability' cannot be given the broad meaning of the word 'unconsciousness.' A person who was injured by having both hands and both legs cut off, would still be capable of dictating a letter to the company notifying it of the accident, and so the word 'physical inability' cannot be such inability as renders it impossible in all events, for the complainant to give the notice, but only such physical inability as would excuse an ordinary prudent man from giving the notice. A person, as stated, with both legs and hands cut off, would be in such physical condition as any Court would excuse him from giving the notice, and the person with one eye destroyed by the accident and being advised that he possibly might lose the sight

in the other eye and be totally blind, would hardly think of giving the notice provided for in the section of the Constitution quoted. A man who is so mentally worried about the possibility that he may be blind, is suffering as much from physical inability as a man who has lost both legs and both arms.''

It appears, therefore, that although more than thirty days elapsed from the time when the complainant became aware of the possibility of the loss of sight in his eye, he did not know of the certainty of the loss until November 17, 1926, which was less than thirty days prior to the date of the notice which he gave to the Association. The leading case in Tennessee upon this subject is Watkins v. Casualty Company, 141 Tenn., 583, 214 S. W., 78. The insured Dr. Watkins received an injury to his eye on January 17, 1917. He did not regard it as serious until after the expiration of the time for giving notice of the injury, prescribed in the policies sued on. He did not give the notice until he learned that he had lost his eye. In an able and elaborate opinion by Mr. Justice McKinney it was held that notice given within the period prescribed beginning when the insured learned of the loss of his eye was a compliance with the terms of the policies; and that the policies were not to be construed to mean that whenever the insured happens to an accident that may possibly produce an injury at some future time that is covered by the policy, the insured does have to give notice within the prescribed time from the date of the accident. In the opinion the leading cases apposite are collated and the analogies demonstrated. The principles running through these cases are summarized in the following paragraph in the opinion in the Watkins case:

''It is too well settled to require citation of authorities that such provisions must be construed according to the intention and understanding of the parties, and that they must be construed against the insurer where such construction does not violate the plain provisions of the contract. If the Company desired to incorporate in its policy a plain provision to the effect that upon the happening of an accident, that may, by some possibility, result in an injury covered by the policy, notice must be given within a specified period from the date of the accident, it has a right to do so, but we think the clause in this policy bears no such construction.''

The Court further held as follows:

''Dr. Watkins had no claim until he lost his eye; therefore he could not make a claim at the time of the accident, for he had not lost his eye at that time. He does not know when

he lost his eye but his first knowledge of the fact was on February 27th, at which time, he gave the notice."

The claim in the instant case is for the loss of the eye, not for mere impairment of it, nor for sick benefits or disability benefits. We would be content to sustain the liability upon this policy upon this finding that the insured did not know until November 17, 1926, that he had certainly lost his eye, and upon this rule that the period within which to give notice did not begin until such knowledge was clear; but we may take into consideration also the constant and acute suffering of the complainant, his total disability until November 1st, his natural concentration of mind upon his physical condition and suffering, his mental isolation from business or practical affairs, his excusable forgetfulness or neglect of the fact that he had this policy laid away in the vault of the bank. We also consider his entire frankness and good faith. We do not question the reasonableness of the limitation for giving notice, but we also realize that such limitation is for the purpose of affording to the insurer an opportunity to make investigation so as to avoid the consequences of bad faith or fraud. These do not exist in this case to the slightest extent.

Counsel for the defendant relies upon the decision of the Western Section of this Court in Brown v. Travelers Insurance Company, 1 Tenn. App., 413, in which the facts were held to be so different from those of Watkins v. Casualty Company, supra, that the rule of that case was not followed. The notice in the Brown case was not given for ten months after the insured had suffered an injury from a fall upon a lawn mower, causing heart trouble from which he died about two months later. In our opinion the facts of the Brown case are not analogous to those of the instant case, and this case is to be aligned with the Watkins case so that the rule of that case is applicable here. We are content to cite no other authority than that decision and the many cases reviewed in the opinion. However, we refer also to cases set forth in the notes in 7 A. L. R., 186, et seq., and 29 A. L. R., 500, et seq.

It results that there is no error in the decree of the Chancellor and it is affirmed. A decree will be entered in this court in favor of the complainant against the defendant and the surety on its appeal bond for the sum of $1250, with interest from September 8, 1927, the date of the filing of the original bill, and all costs of this cause.

Faw, P. J., and Crownover, J., concur.