ARCHIE GRANT v. NORTH AMERICAN CASUALTY COMPANY OF MINNEAPOLIS.[1]

January 30, 1903.

Nos. 13,242—(210).

### Casualty Insurance—Notice of Illness.

The conditions attached to a benefit insurance policy provided that notice should be given to the company within ten days from the beginning of the illness. The insured was taken ill twelve days before he gave notice, and on the day he became incapacitated to attend to his usual occupation he served notice upon the company, which stated that the illness began on the twelfth day prior thereto, which notice was received within ten days of its date. *Held*, the notice was sufficient. The beginning of the illness, within the terms of the policy, was at the time when the insured became incapacitated, and the notice was not void for the reason that it named an earlier date.

### Rulings of Court.

Certain other rulings of the court considered and sustained.

Action in the municipal court of Minneapolis to recover $163 death and disability benefits upon a casualty insurance policy. The case was tried before Holt, J., and a jury, which rendered a verdict in favor of plaintiff for $158. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Alvord C. Egelston*, for appellant.

*Chas. A. Dickey* and *Geo. C. Stiles*, for respondent.

[1] Reported in 93 N. W. 312.

LEWIS, J.

On May 7, 1897, John S. Grant, of Stillwater, signed an application to the defendant company for a policy of insurance; and in consideration of the application, which was made a part thereof, a policy was issued to him on the same day, containing the following provisions:

"Should the death of the above-named member occur after thirty days' membership, with this policy in full force and effect, upon satisfactory proof of said death the company will pay to Archie Grant, brother, if living,—if not, his legal representatives, —the sum of one hundred dollars."

The policy provided that notice must be given the company of any illness, with full particulars thereof, for which claim would be made, within ten days from the beginning of the illness, and that a failure to give such notice would release the company from all liability. The application consisted of an elaborate statement of the applicant's physical condition, an account of his history, specific inquiry into the nature of diseases he may have had, treatment by physicians, and application for insurance in other companies; also,

"And I further understand and agree that the benefits under any insurance granted to me by the above-named company shall not cover any disease commencing or existing, or the cause of which existed or commenced, at or prior to the issuance of any policy under this application, and to any of the following named diseases, *   *   *   chronic diseases   *   *   *."

The insured was taken ill about January 1, 1902, called a physician on the fourth, and was obliged to stop work on January 11. On the fifteenth of that month the company received a notice of his illness, which stated the nature of the sickness to be influenza, with bronchitis; also a heart trouble; date of sickness, December 31, 1901; and probable length of disability, three or four weeks. On March 7, 1902, the insured died, and this action was brought by his representatives to recover, in the first cause of action, $100 on account of his death, and, in the second cause of action, the benefit payments for the time he was incapacitated by sickness.

At the trial below, the court instructed the jury with reference to the notice of illness in these words:

"It appears in evidence here that some time in January, or perhaps earlier, the deceased was taken sick; and, under the provisions of this policy, the defendant agreed to pay to the deceased during his sickness seven dollars per week as long as he was totally incapacitated from attending to his duties. There is evidence in this case that he called on a physician in January,— I believe, the fourth of January last. There is also evidence, I believe, that he kept on with his work until the eleventh. It is admitted by the defendant that notice of illness was received on the fifteenth of January. If you should find from the evidence that he was working in his business till the eleventh, then that notice was served in time. There is a provision in the contract that the notice must be served within ten days after the illness commences. As I construe that contract, it means after the illness for which a claim of benefits could be made; that is, from the time that the total disability occurred; within ten days of that time, at any rate; not less than that,—the company should be notified; and, if you find that John S. Grant was occupied in his calling till the eleventh of January, then the notice in this case was served in time.  *  *  *"

Defendant took exceptions to these portions of the charge, and requested the court to instruct the jury that if they found from the evidence that the insured died from a chronic disease, or from chronic heart disease, the plaintiff could not recover. This instruction was refused. There was no evidence tending to show that the insured was affected by any other chronic malady than heart disease, and the request was based upon the proposition that if the insured died of chronic heart disease, although his illness began in the form of influenza, bronchitis, or grippe, yet he could not recover.

The language of the policy, the conditions indorsed upon the back thereof, and the application, when taken together, are most confusing and irreconcilable. In the application it is stated, as above quoted, that the benefits would not cover chronic diseases. In the conditions indorsed on the back of the policy it is stated that benefits would not be paid when the disability is the result of a chronic disease, whether contracted before or after becoming a member, nor for various special diseases, including heart dis-

ease, and it is also stated that the company will pay for all acute diseases. The trial court, attempting to harmonize these various provisions, instructed the jury that if there was a disease of the heart at the time the insured became a member, whether he was aware of it or not, there could be no recovery upon either cause of action, and, further, that if the insured was taken with influenza or grippe, which resulted in an acute disease of the heart, then the plaintiff was entitled to recover, but that if the insured had recovered from the attack of influenza or grippe, and was afterwards taken ill with a chronic disease of the heart, then there could be no recovery.

Part of the language we have referred to in the application and policy seems to have special reference to the death benefit, and other language apparently has reference to the sick benefits, and the court did not make any clear distinction in applying the language to the two causes of action, and to some extent treated the various conditions and provisions as applicable to both causes of action; the main object attempted by the court being to instruct the jury that no recovery could be had on either cause of action if death or disability was caused by chronic heart disease, whether the same arose before or after the insured became a member, and whether the disease was latent, and brought into activity by the attack of grippe. Therefore the request to the effect that no recovery could be had if the insured died of chronic heart disease had already been submitted to the jury, and, if it was error to refuse it, it was error without prejudice.

The object of giving the notice of illness was to enable the company to verify the statements made by the insured, in order to protect itself from fraud; and such notice is not necessarily fatal because of a mistake in the date of the commencement of sickness, or because it may in fact have commenced long prior to the time when the person became actually incapacitated. In this case, according to the notice, the insured was taken sick about December 31, and he called a physician on January 4, but did not become incapacitated until January 11. It is immaterial that his illness began prior to the time he was obliged to stop work, for how could he know that it would result in disability, and thus entitle

him to benefits? To follow the construction suggested by appellant, it would be necessary for every member, when attacked with any trouble, however slight, to send notice within ten days of its beginning. The purpose of the notice is to inform the company, within a reasonable time, so that it may be enabled to take such steps as desirable to make inquiry, and, as we construe the contract in reference to the facts of this case, the beginning of the illness was that time when the disease had advanced to such a stage that the insured became incapacitated to follow his occupation; and, if the notice was served within ten days from that time, it is immaterial that upon its face it stated an earlier date.

Order affirmed.