## MURRAY v. ÆTNA LIFE INS. CO.

(District Court, D. Montana. November 13, 1916.)

No. 178.

1. INSURANCE ⊚⇒527—POLICIES—ACCIDENT POLICIES.

An accident policy, providing for payment for the loss of the entire sight of an eye, if irrevocably lost, should be reasonably interpreted; and the sight of an eye will be deemed lost, where there is no ability to distinguish and recognize objects, though light from darkness can be distinguished.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1312, 1313.]

2. INSURANCE ⊚⇒646(8)—ACCIDENT POLICIES—BURDEN OF PROOF.

One seeking to recover the indemnity provided in a policy for the entire loss of the sight of an eye within a stipulated time has the burden of establishing his loss of sight within such time.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1665.]

3. INSURANCE ⊚⇒527—ACCIDENT INSURANCE—EVIDENCE—SUFFICIENCY.

Where a policy provided for an indemnity in case of the irrevocable loss of the entire sight of an eye, a physician is not entitled to such indemnity, though he suffered such impairment of the sight of one eye that he was unable to use such eye to any advantage, either in reading for a considerable period of time or operating, where he could normally distinguish objects before his sight would fail; it being the loss of sight as a man, and not as a professional man, which the policy covered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1312, 1313.]

At Law. Action by Thomas J. Murray against the Ætna Life Insurance Company, a corporation. On motion for new trial after verdict for plaintiff. Motion granted.

E. B. Howell and Walker & Walker, all of Butte, Mont., for plaintiff.

H. A. Frank and R. F. Gaines, both of Butte, Mont., for defendant.

BOURQUIN, District Judge. In a trial upon a policy providing for payment amongst other things, for "loss of entire sight of one eye, if irrevocably lost" as the result of and within 90 days from accident, the jury was instructed that, though the injured eye could "distinguish light from darkness, or perceive objects temporarily, for brief intervals," yet, if "all useful and practical sight was irrecoverably lost," it was within the policy and plaintiff was entitled to recover. Verdict for plaintiff, and defendant moves for a new trial, for error in said instruction and for insufficiency of the evidence.

[1] It is believed the instruction is the law. The indemnity is virtually for the loss of the benefit of sight or vision. The latter may be defined as the ability to perceive, distinguish, and recognize objects, and the former as satisfaction of will, need, or pleasure. If this abil-

ity is so far destroyed that what remains will not to practical and useful extent confer any of this benefit, entire sight, within the construction of analogous terms in insurance law, is lost. So would it be in popular phrase or sense. The interpretation must be reasonable and relative, not literal. The ability to perceive light and objects, but no ability to distinguish and recognize objects, is not sight, but blindness. So would it be, though there were intermittent flashes of the latter ability. To no practical or useful extent would it serve the will, need, or pleasure. See Travelers' Ass'n v. Rogers (Tex. Civ. App.) 163 S. W. 421; Casualty Co. v. Wynne, 36 Okl. 325, 129 Pac. 20; Moore v. Ætna, etc., Co., 75 Or. 47, 146 Pac. 151, L. R. A. 1915D, 264, and cases therein cited.

[2, 3] But it is also believed the evidence is insufficient to sustain a finding or verdict that of his injured eye plaintiff has lost the entire sight as herein defined. [The evidence is set out at length, omitted for brevity, the nature of which is sufficiently disclosed by subsequent comment.] Remembering the burden is on plaintiff to prove that within the 90-day period he lost the entire sight, as hereinbefore defined, of one eye, the evidence fails. It is not enough that sight may be so far lost and the eye so impaired that he is disabled to perform major operations, or to read continuously, or that, when he closes the uninjured eye, the injured one loses vision, or that natural co-ordination and accommodation are lacking; for defendant did not contract to pay upon the happening of any or all these contingencies, but only when entire sight was lost—when all practical and useful sight for any purpose of will, need, or pleasure was lost.

The evidence is too lacking in facts and replete with ambiguous conclusions to support a finding that plaintiff has lost entire sight of the injured eye. The conclusions repeatedly testified to are that plaintiff can normally see objects but a "short time," and then vision fades out "in a very much shorter time," or "longer," dependent on his physical condition; that he cannot read, distinguish letters, "for any amount of time"—"not able to use the left eye to any advantage," and the like. But the facts testified to are he can normally see objects for a short time, and then, if very tired from the use of both eyes, when he closes the uninjured eye and subjects the injured one to the abnormal strain of excess nerve impulse, it fails of vision in a very short time, defined as 3 to 5 minutes. If not so tired, it may be 10 minutes before it fails; that his eyes are nearly normal for distant vision, and can comfortably be used with lenses for several minutes; that with his old lenses he can read the chart, distant, practically normally, for as much as 5 minutes, and after a few minutes' rest, "very likely within 10 minutes or 15 minutes," he can so read again; and that lenses will correct the lack of co-ordination and accommodation.

If, after plaintiff has become very tired from the use of both eyes, he still has power in the left eye to such extent that he can close the right eye and still see with the left eye thus abnormally burdened, for 3 to 5 minutes before its vision fails; if with lenses he can enjoy normal distant vision for several minutes at a time; if he can read the test chart, distant, for as much as 5 minutes, and then, after resting

10 to 15 minutes, can again so read it; if with the left eye alone, abnormally used, he could walk safely an indefinite distance on Main street, fair to infer a fourth mile, or as far as easily walked in 5 minutes (and all this is the testimony of himself and physician)—it cannot be said plaintiff has lost entire sight of the left eye. On the contrary, the proof is he has not. He has between a fourth and a half of its former vision, a substantial part, and which in respect to many needs and pleasures will render him practical and useful service, doubtless greater in a life of inactivity and leisure than in one active and professional. But it is loss of sight as a man, and not as a doctor, that this term of the policy applies to. That these conclusions in the testimony, considered alone by the jury, would support the verdict, is admitted, but that the jury could rightfully do so is not admitted. The facts in the testimony demonstrate the conclusions are mere erroneous estimates or opinions, or ambiguities explained by the facts, and not to be relied upon. The said facts are judicial admissions by plaintiff, against interest, and, not receded from, were bound to be given full weight by the jury. The jury could not ignore them, and consider only mistaken conclusions, and therefrom draw unreasonable inferences, but was bound to render a verdict in accordance with the facts. It did not.

The motion for a directed verdict should have been granted. As it is, the only remedy is a new trial. Granted.

Later the suit was settled.