## ANNA G. BERSET v. NEW YORK LIFE INSURANCE COMPANY.[1]

July 13, 1928.

No. 26,795.

**What constituted total permanent disability under defendant's policy.**

1. Insurance company agreed to pay a monthly income to insured if he became totally and permanently disabled from engaging in any occupation for profit, and also agreed that total permanent loss of use of both hands should be considered total permanent disability. *Held* that loss of use of both hands entitled insured to the income, although able to conduct a business for profit.

**Total loss of use of hands defined.**

2. Loss of use of hands is total within meaning of policy, when no practical use can be made of them in doing the things ordinarily done with hands.

**Presumption that disability was permanent.**

3. One paragraph of the contract provides that after disability has been continuous for three months it shall be presumed to be permanent.

[1] Reported in 220 N. W. 561.

Another provides that company may demand from time to time that insured furnish proof of continuance of disability. No such demand having been made and disability having continued for more than three months, the court correctly instructed that it was presumed to be permanent and that the company had the burden of overcoming the presumption.

**Verdict for plaintiff sustained.**
    4. The verdict is sustained by the evidence.

Accident Insurance, 1 C. J. p. 465 n. 43; p. 466 n. 57; p. 511 n. 46.

See note in 24 A. L. R. 209; 51 A. L. R. 1050; 14 R. C. L. 1318; 3 R. C. L. Supp. 382.

Action in the district court for Ramsey county by the plaintiff as assignee of three instalments of $50 each claimed to be due under the disability clause of a life insurance policy issued by defendant to her husband, Nils A. Berset. There was a verdict of $159.75 for plaintiff, and defendant appealed from an order, Bechhoefer, J. denying its alternative motion for judgment or a new trial. Affirmed.

*Doherty, Rumble, Bunn & Butler,* for appellant.
*Schwartz & Halpern,* for respondent.

TAYLOR, C.

Defendant issued an insurance policy to Nils A. Berset in which among other things defendant agreed to pay him the sum of $50 per month during his lifetime if he became wholly and permanently disabled. The policy provided that disability should be deemed to be total whenever it prevented the insured "from engaging in any occupation whatsoever for remuneration or profit." It further provided that the total and permanent loss of the use of both hands should be considered total and permanent disability. It further provided that:

"Under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months."

It contained this further provision:

"The Company may from time to time demand due proof of the continuance of such total disability, but not oftener than once a year after such disability has continued for two full years, and upon failure to furnish such proof, or if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, income payments shall cease."

Berset's hands were crushed and badly injured in February, 1923, and thereafter defendant paid him the stipulated sum of $50 per month until September 1, 1926. Defendant then refused to make any further payments on the ground that Berset was not totally disabled. He assigned his claim for the next three instalments to plaintiff, his wife, and she brought this action to recover them. The jury returned a verdict in her favor, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

Berset was in the hospital for two months on account of his injury and received treatment therefor for about a year thereafter. Prior to his injury Berset had been engaged in the real estate business and in getting out timber products. In the winter following the accident he again engaged in the business of getting out timber products and continued that business the next winter. In its brief defendant states:

"It is our contention that the evidence in this case conclusively establishes that the insured from and after September 1, 1926, has been and now is able to engage in the real estate business and in dealing in timber and farm lands for remuneration and profit."

The evidence bears out this claim, and would bar a recovery if the provision defining total disability as inability to engage "in any occupation whatsoever for remuneration or profit" were applicable. But the policy provides that the loss of the use of both hands shall be deemed a total permanent disability. A person may lose both hands and still be able to conduct a business for profit. The fact that he can and does do so is not the determining factor under this pro-

vision. The question here is whether Berset has lost the use of his hands. If he has, and the loss is total and permanent within the meaning of the policy, he is entitled to the stipulated payments, although he may be able to manage and direct a business for profit.

The court instructed the jury as follows:

"The permanent and total loss of the use of the hands means a total and permanent loss of their use in the practical, everyday work of the insured. The permanent and total loss of the use of the hands does not mean the total destruction of the function in each hand. This provision is to be construed practically. If you find that because of the injuries sustained the insured's hands have been injured so that he has a permanent loss in his practical everyday affairs and [of] their use, then you would find for the plaintiff."

Defendant challenges this instruction; but we think it was substantially correct and gave the jury a correct understanding of the principles by which they were to be governed in determining whether the loss of use was total. If Berset was unable to make any practical use of his hands in doing the things ordinarily done with hands, we think the disability should be deemed total within the meaning of the policy. Their use is lost when they cannot perform any substantial part of the functions which hands are adapted to perform. Illustrative applications of the governing principle are found in the cases cited in 3 Dunnell, Minn. Dig. (2 ed.) § 4871c, although those cases differ from this in their facts. See also Supreme Court of Honor v. Turner, 99 Ill. App. 310; Sisson v. Supreme Court of Honor, 104 Mo. App. 54, 78 S. W. 297; International Travelers Assn. v. Rogers (Tex. Civ. App.) 163 S. W. 421.

The court instructed the jury to the effect that Berset, having been continuously disabled for more than three months, the disability was presumed to be permanent, and that defendant had the burden of overcoming this presumption. Defendant insists that this instruction erroneously placed the burden of proof on defendant, and that plaintiff had the burden of showing that the disability was permanent. The policy provides:

"Under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months."

Unless this provision is qualified or made inapplicable by some other provision of the contract, the instruction was correct. Defendant points to the provision, previously quoted, under which defendant may from time to time demand proof of the continuance of the disability, and which provides that:

"Upon failure to furnish such proof, or if it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, income payments shall cease."

We shall assume, without deciding, that if such a demand had been made and Berset had failed to furnish such proof, or it appeared to defendant therefrom that he was able to engage in some occupation for profit, the burden would be upon plaintiff to show that total disability continued. But here no such demand was made, and this provision, whatever may be its effect when properly invoked, did not come into operation. We agree with the learned trial court that the presumption created by the other provision applies to this case.

Defendant contends that the verdict is not sustained by the evidence. Many questions intended to show the acts which Berset was unable to perform with his hands were objected to by defendant and excluded, and the evidence in respect to that matter is not as full or as specific as it might be. It appears however that prior to the accident Berset had taken part personally in the various activities of his logging operations, such as building camps, cutting roads, running and marking lines, and driving teams; and that since the injury he has been unable to hold or use tools, or run or mark a line, or drive a team, or operate an automobile or other machinery. The doctor who dressed his wounds and attended him thereafter, in describing the injuries, states:

"He gave the history of having been run over, his hands and forearm having been run over by a train, the car wheels passing over the hands; and his hands were in very bad condition when I saw

him.   I questioned an amputation at that time.   He was anxious to save both his hands if possible; and besides numerous fractures in the left hand he had fractures at the lower end of both bones of the forearm; the bones were crushed in the hand and out of position; and he had a fracture in the right hand, the lower end of the radius in this arm; the bones were badly smashed, badly out of position."

The right hand was the least injured of the two.   The doctor, asked as to the injury to the muscles and tissues of the right hand, answered:

"It was smashed—that is the only way I can describe it, it was smashed, muscles, fascia, tendons, everything smashed."

The doctor treated Berset for about a year, and examined him again about two years before the trial and again at the trial.   He says that Berset has "a very slight motion" of the fingers of the left hand, and that "all the tendons and muscles are interfered with to such an extent that he no longer has the power of flexion."   He further says that:

"He [Berset] has better motion in his right hand, that is, he can flex his hand down fairly well, the fingers; but there has also taken place a contraction in the palm of his hand.   There has been an atrophy of the muscles there due to the contusion that he received, he has got a contraction there, but he is able to bring his fingers down better, but not enough so that he can grasp an object himself."

We think the evidence made the question of whether Berset had sustained a total and permanent loss of the use of his hands a question for the jury, and their finding must stand.

Order affirmed.