LOCOMOTIVE ENGINEERS' MUT. LIFE & ACC. INS. CO. v. MEEKS.

(Division B. April 14, 1930.)

[127 So. 699. No. 28524.]

Jacobson & Cameron, of Meridian, for appellant.

Victor W. Gilbert, of Meridian, for appellee.

Argued orally by **Chas. B. Cameron**, for appellant, and by **Victor M. Gilbert**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Jesse C. Meeks filed suit in the circuit court against the appellant upon a policy, or certificate, issued to him by the appellant. He alleged that the defendant is a mutual Life and Accident Insurance Company, and as such, issues policies of insurance against the loss of life, limbs, eyes, and other injuries sustained by its policy-holders and to that end is authorized to do and is doing business in the state of Mississippi. That the plaintiff is a member of said defendant association in good standing, and has been since the 9th day of February, 1910. That the defendant operates under a constitution and by-laws, and in and by virtue of section 35 of said by-laws covering its insurance department it is provided as follows:

"Sec. 35. Any member of this Association losing, by amputation, a hand at or above the wrist joint, a foot at or above the ankle, or sustaining the total and permanent loss of sight in one or both eyes, shall receive the full amount of his insurance. In case of permanent and total loss of sight proof of same must be made out on a form furnished by the Association and signed by two (2) experienced oculists. Where the eye or eyes have not been removed from the socket, proof of blindness will be filed at home office for one year from the date of examination,

at which time the member will be required to furnish additional and final proof, signed by two (2) experienced oculists certifying to the total and permanent blindness of said member. The Association reserves the right to designate one (1) of the oculists for each examination and to require all certificates sworn to, and the examining oculists may say whether or not, in their judgment, the claimant is totally and permanently blind; also state cause of blindness. This Association will not recognize a claim for the insurance of any certificate holder for impaired eyesight, or color blindness, but for total and permanent blindness only, in one or both eyes.''

A copy of the certificate, or policy, was attached to the declaration. It was then alleged that the plaintiff, who is a locomotive engineer in the employment of the Mobile & Ohio Railroad Company and under duty to operate locomotives of said company, did on the 22d day of October, 1927, in the course of his employment and while on duty as such engineer, suffer an injury to his eye causing him to be totally and permanently blind in the said eye, and by reason thereof has lost the total sight of his left eye. That by virtue of the said certificate, the defendant became indebted to him in the sum of one thousand five hundred dollars. He then alleged that on or about the first day of May, 1928, when the plaintiff realized that he was blind in his left eye, he filed with the defendant proof of the loss thereof, and did on or about the 15th day of May, 1929, or more than one year after the filing of his said first proof of loss, he filed the second proof of loss as required by the constitution and by-laws of said defendant association, which first and second proofs of loss were made out on a form furnished by the association and signed by Dr. C. P. Mosby and Dr. H. L. Arnold, two experienced oculists residing in Meridian, Mississippi.

The bill further alleged that on the 22d day of October, 1927, the plaintiff was a member in good standing of the said defendant association and of the Sowashee Division, No. 593 of the association, and had paid all dues and as-

sessments owing by or required of him, and is still in good standing with all dues and assessments paid in said association, but notwithstanding the said injuries and the liability of the defendant and the duty and obligation of the defendant to pay to the plaintiff the sum of one thousand five hundred dollars, it has failed, refused, and neglected to do so and has denied liability on the said policy; and on June 3, 1929, did finally refuse to pay said claim. Wherefore, he demanded judgment, etc. A copy of the policy and by-laws was filed as exhibit to the declaration.

The defendant pleaded the general issue denying indebtedness, without any allegation by plea, specially or generally, that the proof of loss was not furnished as required in the by-laws.

On the trial of the case, the appellee testified to the injury of his eye on October 22, 1927, and subsequent medical treatment. He testified that he could tell daylight from dark and could see the form of anything in the light, but that he could not distinguish anything and could not get a paper close enough to his eyes to read the headlines; that after the injury he could not see the semaphore board, that is the train order board, with his left eye at all, but if he would get near the switch light or any thing light, he could see that it was a light, but could not distinguish the color or anything else about it. That he could not see signal lights while traveling down a track, out of his left eye; that he could close his right eye and not distinguish anything with his left eye. That he could not read anything with his left eye no matter how large the print, nor could he read the number of his engine out of his left eye. He further stated that by closing his right eye he could not see steps distinctly and could not tell how low it is or anything about it, whether there is a projection or whether it is level, nor could he distinguish an elevation of any kind, but that he could tell there was a dark place and a light place; that he could just tell there was a dark object passing between himself and the light,

and that he could look at a building and tell that it was light above the building, but otherwise it was dark below. He further testified that he could see with his right eye, and the injury to his left eye had not rendered it impossible for him to perform the services of engineer. The eye ball had never been removed; he could tell the difference between daylight and dark out of his left eye; he could see the form of a person but could not tell anything of the color. It was further developed by counsel on cross-examination that he could see the outline of counsel at a distance of eight and fifteen feet and when counsel moved his arm he could see that there was some kind of a motion but could not tell the direction in which counsel's arm was moving; that before the injury to his left eye there was no difference in his ability to distinguish different colors between his left eye and his right eye, and he had never worn glasses prior to his injury, and that an effort was made to get powerful glasses that would help his sight but that it could not be done, that is, glasses would not aid his vision.

Dr. Mosby, one of the oculists who treated him and who made the certificate to the company to the effect that for all practical purposes he would say that the appellee had lost his eyesight in his left eye, and that this condition was permanent and that glasses could not and did not benefit the appellee, testified on cross-examination that there was some ability to distinguish light, and for that reason he could not say that there was a total loss of vision, but it was total for practical purposes, and that he could not use his left eye for any practical purposes. The physician also testified that plaintiff could see his fingers at a distance of four feet by a test made by the witness, that is, he could see a dark object where the fingers were.

The constitution and by-laws of the appellant were introduced in evidence.

Dr. Touchstone, an oculist introduced by the defendant, testified substantially to the same effect, except he

stated that in his opinion the ability to perceive objects under the circumstances above stated did not constitute total blindness.

Both the plaintiff and the defendant requested peremptory instructions, and the court sustained the motion of plaintiff for peremptory instruction, and judgment was entered for the plaintiff in the amount sued for.

It is contended by the appellant that the court committed error in granting peremptory instruction for the plaintiff, and that it should have entered one for the defendant, but if mistaken in the petition that the defendant should have had a peremptory instruction, that then the question should have been submitted to the jury for a decision. We are, therefore, called upon to decide whether or not the plaintiff had sustained the total and permanent loss of sight in his left eye. We do not regard the testimony as being conflicting, but think the question turns upon the construction of the meaning of the terms used in the policy. In our opinion, the ability to see the outline of an object without the ability to distinguish what it is for all practical purposes is blindness; that the policy must be given a practical rather than a literal interpretation; that the interpretation must be reasonable and relative and not literal; that the ability to perceive light and objects, but no ability to distinguish and recognize objects, is blindness for all practical purposes. While we have not decided the precise question here involved, we think we have decided the controlling principle in analogous cases.

In Metropolitan Casualty Ins. Co. v. Cato, 113 Miss. 283, 74 So. 114, the court held that, under a clause in an accident insurance policy giving a weekly indemnity, if the injuries continuously and totally disabled and prevented insured from performing any and every kind of duty pertaining to his occupation, where a plantation manager accidentally broke his hip, as a result of which he became unable to ride horseback, or to attend to his duties daily, and was forced to resign, but did occasional-

ly, when the weather was good, ride in a buggy to a plantation owned by his daughter and give instructions to the foreman and consult with him when the latter came to the house, but was unable to see that his instructions were carried out, or to keep the books regularly, the disability was total and not partial under another clause providing for only half indemnity if the injury disabled insured from performing some one or more important daily duties pertaining to his occupation, since, when injured is prevented by his injury from doing all the substantial acts required of him in his business, he is totally "disabled," notwithstanding the fact that he occasionally is able to perform some single act connected with his business.

In Equitable Life Assurance Society v. Serio (Miss.), 124 So. 485, it was held that recovery under insurance policy by reason of total and permanent disability does not require a condition of complete helplessness, nor such an entire physical or mental inability in respect to pursuit of an occupation or employment that the insured can do absolutely nothing; and that where insured, under policy containing provision authorizing recovery for total and permanent disability, became afflicted with tuberculosis, he was "totally disabled" within meaning of policy, regardless of fact that he was able to assist family to certain extent in operation of small country store. In that case a provision in the policy read: "If the insured, while less than sixty years of age and while this policy is in full force and effect, shall become totally and permanently disabled, and shall furnish due proof that he is physically or mentally incapacitated to such an extent that he is rendered wholly or permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, and that such disability has then existed for not less than sixty days, the society will, upon receipt of said proof, waive the payment of any premium or premiums that may become payable thereafter under this policy during such dis-

ability. And six months after receipt of said proof of disability, the insured may draw a sum not to exceed one-tenth the face amount of this policy and a like sum annually thereafter during the continuance of such disability.''

In the course of the opinion, the court said: ''The construction which is placed by nearly all courts on the insurance contract above quoted is an equitable and reasonable interpretation; and is not that literal interpretation which would require a condition of complete helplessness, nor such an entire physical or mental inability in respect to the pursuit of an occupation or employment that the insured can do absolutely nothing. And particularly is the construction the more liberal in its application to a case where the disability arises out of a disease the nature of which is such that common care and prudence require the insured to rest to the extent that he shall refrain from the ordinary exactions of any fixed employment, else the disease will progress and cause death.''

Further on in the opinion, the court said: ''As already said, courts must give these contracts a reasonable interpretation, an interpretation which will stand the test of honesty of purpose in their meaning, and which will square the transaction between the parties in making the contract with some valuable object in contemplation at the time. If the term "total disability' should be held to mean utter helplessness, and 'permanent disability' be held to mean utter hopelessness, then about the only case covered would be where the insured has lost both arms and both legs or some other such a case so rare as not to be for a moment reasonably considered as ever having been within the contemplation of the insured at the time of the taking of the policy.''

Other states dealing with the precise, or similar, case contained in the contract here involved have refused to place a literal construction, but rather one of a practical value, upon the terms of the policy. In Pan-American

Life Ins. Co. v. Terrell, 29 F. (2d) 460, 461, the Circuit Court of Appeals of the Fifth Circuit held that "entire sight" of eye is lost, within accident insurance policy, though not completely destroyed, if sight left is of no practical use or benefit, as in case of inability to distinguish or recognize objects. The terms used in the policy involved in that case provided for the loss of sight of one eye. The policy contains a clause insuring him against bodily injury, through accidental means, resulting within ninety days from the date of the accident in the "loss of the entire sight of one eye, if irrecoverably lost." In the opinion the court said: "It is insisted that there should have been no recovery, since the injury did not result in the entire loss of sight or total blindness in the right eye. It is quite uniformly held that the entire sight is lost, although it is not completely destroyed, if what sight is left is of no practical use or benefit. As was well said by Judge BOURQUIN in Murray v. Aetna Life Ins. Co. (D. C.), 243 F. 285, 'the ability to perceive light and objects, but no ability to distinguish and recognize objects, is not sight, but blindness.' " The court cited International Travelers' Association v. Rogers (Tex. Civ. App.), 163 S. W. 421; Watkins v. U. S. Casualty Co., 141 Tenn. 583, 214 S. W. 78; Brotherhood of Railroad Trainmen v. Britton (Tex. Civ. App.), 292 S. W. 286; Tracey v. Standard Accident Ins. Co., 119 Me. 131, 109 A. 490, 9 A. L. R. 521.

In this last case the court had before it a policy involving the entire loss of sight of an eye, and the court held: "Entire loss of sight of an eye within the meaning of an accident insurance policy occurs when insured cannot distinguish colors or one object from another in strong light, although he can distinguish between light and darkness." In the opinion the court: "The meaning of the word 'entire' should be determined in the light of the purpose and intent of the policy; why the plaintiff bought it; and with a construction most favorable to him. The intent and purpose of the policy as a business proposi-

tion was to indemnify the plaintiff for the loss of the complete or 'entire' use of his eye. The 'loss of the entire sight' of an eye, and, the loss of the entire use of an eye, by blindness, in practical effect, are precisely the same. Being a business contract, this policy should be construed, like any other contract, with reference to the object, purpose, conditions, and circumstances. The eye has earning capacity as well as the hand. To indemnify the complete loss of the sight of the eye as an earning factor was undoubtedly one of the controlling reasons for taking the policy. We feel that it would be unfair to the company, as well as the plaintiff, to impute to it the intention, by the artful employment of a word, to base its liability upon the frail and frivolous distinction between ocular ability to discriminate a flood of light from total darkness, and without the power to distinguish one object from another in the strongest light. We have little doubt that the company used the strong word 'entire' to protect itself against any possible fraud regarding the degree of vision that might be claimed to come within the terms of the policy, short of what might be declared a total loss of sight, based upon inability to see or distinguish one object from another. Accordingly, the phrase 'loss of entire sight' should be so construed as to give the plaintiff what he bought and paid for, and not to defeat the whole purpose and intent of the contract. It should be held to mean that the entire loss of the use of an eye from blindness is a loss of the entire sight of that eye. But if technicalities were to be invoked, then the meaning of the word 'sight' becomes as important as the meaning of the word 'entire.' 'Sight' is defined in Webster's Standard Dictionary: (1) The power of seeing; the faculty of vision or of perceiving objects. (2) Act of seeing; perception of objects by the instrumentality of the eyes; view. To 'see' is defined: To perceive with the eye; to have knowledge of the existence and apparent qualities of by the organs of sight; to examine with the eyes; to behold; descry; view; observe; inspect. It is too

plain for further discussion that the plaintiff had met with an entire loss of power to 'see,' to 'behold,' 'descry,' 'view,' 'observe,' or 'inspect,' as these terms are defined. He had, therefore, met with a 'loss of entire sight,' according to the etymology of the words 'entire' and 'sight,' as employed in the policy.''

In a case note to Jones v. Continental Casualty Co., 18 A. L. R. 1329, et seq., this provision of policies and their construction is discussed. At page 1346, under the heading ''Provision against loss of eyesight,'' the editor says: ''It has been held that the words 'total and permanent loss of the sight of both eyes,' when used in a policy insuring a person who has but one eye, which fact is known to the insurer, means the loss of eyesight, and that a recovery may be had where the insured loses the sight of his remaining eye. Humphreys v. National Ben. Asso. (1891), 139 Pa. 214, 11 L. R. A. 564, 20 A. 1047.'' The editor also cites Murray v. Aetna Life Ins. Co., supra, where the policy provided for the payment of an indemnity for ''loss of entire sight of one eye, if irrevocably lost'' as the result of an accident, it was held that a recovery could be had, if by an accident all the useful and practical sight of the eye was irrevocably lost, although the injured eye could distinguish light from darkness, or perceive objects temporarily for brief intervals. See, also, other cases cited in the note. International Travelers' Ass'n v. Rogers (Tex. Civ. App.), 163 S. W. 421; Ozark Mutual Life Ins. Association v. Winchester, 116 Okl. 116, 243 P. 735; Continental Casualty Company v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Berset v. New York Life Ins. Co., 175 Minn. 210, 220 N. W. 561.

We think the proof, therefore, establishes liability and as there was no dispute as to the facts, a peremptory instruction was properly granted.

It is also contended that there was insufficient proof of compliance with the by-laws, by the plaintiff, prior to the bringing of the suit. The plaintiff pleaded generally the performance of the conditions upon his part. Section

566 of Hemingway's 1927 Code (section 769, Code of 1906), provides: "In pleading the performance of conditions precedent, the plaintiff or defendant may aver generally that he duly performed all the conditions on his part; and the opposite party shall not deny such averment generally, but shall specify in his pleading the condition precedent, the performance of which he intends to contest."

The defendant did not, by pleading, set up a breach of this condition or challenge the sufficiency of the proof of loss. The plaintiff took deposition of the defendant by filing interrogatories, No. three of which was as follows: "On or about the first day of May, 1928, the plaintiff filed with the defendant, proof of the loss of eye sight in his left eye, and on or about the 15th day of May, 1929, he filed a second proof of loss as required by the Constitution and By-Laws of the defendant Association. Please attach as an exhibit to the answer to this interrogatory of said first and second proofs of loss, and dates of filing?"

The answer to this interrogatory by the defendant was as follows: "First proof of loss and second proof of loss filed by plaintiff with this defendant are in file forwarded to local officer for delivery to Jacobson & Cameron, Attorneys for this Association, at Meridian, Mississippi, and this defendant does not at this time, have them in its possession."

Under the statute above set out, the defendant did not deny the sufficiency of the proof of loss submitted as he is required to do by the statute, and proofs were filed with nothing to show that they were challenged for sufficiency in any manner. We, therefore, hold that there was a sufficient compliance with the law by the plaintiff in proving the injuries and loss of the eye, and that the matter cannot be availed of here. Judgment of the court below will, therefore, be affirmed. Affirmed.