## CARL L. JENSVOLD v. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY.[1]

March 2, 1934.

No. 29,766.

*A. V. Rieke, Bonita F. Rieke, Maurice H. Rieke,* and *Lee & Lee,* for appellant.

*Daly & Barnard,* for respondent.

*HILTON, Justice.*

Action on a limited accident insurance policy to recover damages for the loss of the sight of an eye. The defendant appeals from an order denying its motion in the alternative for judgment notwithstanding the verdict or for a new trial.

[1]Reported in 253 N. W. 535.

The policy was written by the Southern Surety Company and later assigned to and assumed by the defendant here. Among other things it insured plaintiff against:

"The effects resulting exclusively of all other causes from bodily injury sustained by the insured during the life of this policy, solely through external, violent and accidental means, and which bodily injury is sustained by the insured while driving, riding in or on, demonstrating, adjusting or cranking an automobile, or in consequence of being struck, run down or run over by an automobile, or caused by the burning or explosion of an automobile, said bodily injury so sustained being hereinafter referred to as 'such injury' *   *   *."

The policy further provided, under the heading of "Specific Losses," as follows:

"Loss of entire sight of one eye: (h) The company will pay fifteen hundred dollars ($1,500.00), in lieu of all other indemnity, if 'such injury' within thirty days from the date of the accident shall result in the irrecoverable loss of the sight of one eye."

Also:

"Written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury. *   *   *."

The complaint alleged that on May 7, 1932, plaintiff, while adjusting his automobile and solely by reason thereof and through and by external violence and accidental means, suffered and sustained an accident and injury to his left eye, and that as a result thereof he had irrecoverably lost the sight of said eye; that plaintiff had in all respects complied with the conditions named in the policy. The answer denied that plaintiff had sustained an accident or received any injury to his eye. It also declared that if plaintiff did suffer an accident as claimed the same did not come within the provisions of the policy; that plaintiff's alleged injury was a bodily infirmity which existed prior to the time the policy was issued; and that

plaintiff had not given notice of the accident within 20 days thereafter.

The case was tried to a jury. When plaintiff rested defendant moved for a directed verdict, which was denied. At the close of all the evidence each party moved for a directed verdict. Both motions were denied. The court submitted only one question of fact to the jury, viz:

"Did the plaintiff, while adjusting a nut on his automobile, receive an injury to his eye, by the slipping of the wrench, which injury resulted in the loss of the entire and irrecoverable sight of his left eye, within thirty days from the date of the injury?"

The jury answered this question in the affirmative. The court stated to the jury that the only question of fact for its determination was embodied in the above quoted question and that the other issues were questions of law and would be determined by the court. The record discloses that the court then asked counsel: "Does that cover the question of fact?" The attorney: "I think so." The court made findings of fact, in the preamble of which it is stated:

"At the close of the evidence both parties moved for a directed verdict. The court then announced that in its opinion there was one question only to submit to the jury, to-wit: [the question hereinbefore quoted].

"That the court without objection from either party proceeded to instruct the jury and submit to them the hereinbefore set forth interrogation, that the jury deliberated on the question and answered the question 'Yes'; that at the close of the trial and upon the retiring of the jury no objection was made by either party to the procedure hereinbefore set forth, nor at the bringing in of the verdict was any objection made by either party."

The court then found, in effect, the same facts as contained in the question submitted to the jury, and in addition, among other things, found that on May 7, 1932, plaintiff, while making an adjustment on his automobile, suffered an accidental injury to the cornea of his left eye; that the injury was not of such gravity as to cause him any alarm; that plaintiff thereafter gave the injury personal atten-

tion by bathing but continued with his work as a salesman; "that about ten days after the accident hereinbefore mentioned the injury to said left eye healed, causing scar tissue to form, which resulted in the irrecoverable loss of the sight of plaintiff's left eye"; that on June 3, 1932, plaintiff notified defendant of the loss on a form furnished to him by an agent of defendant; and that said notice set out the facts surrounding the injury and its result.

As conclusions of law the court found that plaintiff was entitled to judgment against defendant for $1,500, with interest, together with costs and disbursements, and ordered judgment therefor.

Appellant assigns as error the court's denial of its motions for a directed verdict; the court's submission to the jury of only the one question, hereinbefore quoted; and that it erred in making findings of fact and conclusions of law. The claim is that appellant was entitled to have all the questions of fact determined by the jury. That right, however, may be waived. On the record we must hold that such right was waived. The appeal to this court was perfected August 24, 1933; the court's certificate settling the case was made September 13, 1933. The case so settled included the findings of fact and conclusions of law. By means of three affidavits (one by each of the three attorneys who appeared for defendant) dated, respectively, September 15, 1933, October 13, 1933, and October 16, 1933, an attempt is here made to show that the transcript of the proceedings as settled does not correctly disclose what actually occurred in so far as the hereinbefore first quoted statement of the court and the consent thereto by the attorneys is concerned. The settled case is all that we have before us. Its correctness cannot be here questioned in the manner attempted. We are bound by it. Olesen v. Noren, 161 Minn. 113, 201 N. W. 296; Feely v. Kane, 178 Minn. 141, 226 N. W. 404.

We will therefore consider whether the findings and verdict were sufficiently supported by the evidence.

Plaintiff was a traveling salesman for the Kunz Oil Company. He testified that on May 7, 1932, after his arrival home at Granite Falls, he jacked up his car and did some work in fastening a spring on its brake which had become loose. He then noticed that the

plug to the oil pan was moist. Thinking that oil was leaking out of the crank case, he took a wrench and as he was endeavoring to tighten the plug the wrench slipped and struck his left eye. He immediately got out from under the car, let down the front end thereof, and went into the house and bathed his eye with cold water. The eye was somewhat inflamed and painful. The next day he consulted a doctor and received treatment. The eye was then badly inflamed. For several days he made business trips in the surrounding country for his employer. The eye was apparently getting worse. It had been all right prior to the accident.

Dr. Passer, an expert witness for plaintiff, who examined him at the time of the trial, stated that he found a white spot on the cornea of plaintiff's left eye; that plaintiff had no vision in that eye except that he could distinguish between light and dark by looking to the side; that "he could have some light perception, but he could not see objects in the way we ordinarily speak of seeing objects." He stated that as a result of an accident such as plaintiff had it "might take two weeks or more" for scar tissue to form so as to cause loss of sight such as he had determined plaintiff had sustained. Plaintiff's testimony was to the same effect. He testified that a week or ten days after the accident the doctor who had treated his eye a number of times noticed a white spot forming over the pupil of the eye; that the doctor called his attention thereto and that plaintiff himself then saw it. He stated: "If I dilate the pupil I can see a little to the side, but straight ahead I can't see a thing"; that as a result of the accident he "went blind on it." Another witness testified that he saw plaintiff in the evening of the day of the accident; that the eye was then inflamed, and that sometime later he noticed that a white spot had formed thereon. No medical testimony was given on behalf of defendant. Plaintiff's former wife and another person (the only witnesses called by defendant) testified that there was a white spot on the left eye before the accident.

Without going into further detail, we conclude that on all fact issues involved plaintiff sustained the burden upon him. Within a reasonable interpretation of the terms of the policy, plaintiff had suffered, within 30 days after the accident, irrecoverable "loss of

entire sight of one eye." The circumstance that he could distinguish between light and darkness does not permit a contrary conclusion. Watkins v. United States Cas. Co. 141 Tenn. 583, 214 S. W. 78; 18 A. L. R. p. 1346; Murray v. Aetna L. Ins. Co. (D. C.) 243 F. 285; Tracey v. Standard Acc. Ins. Co. 119 Me. 131, 109 A. 490, 9 A. L. R. 521. In Berset v. New York L. Ins. Co. 175 Minn. 210, 220 N. W. 561, the insurance policy there sued upon provided that the total and permanent loss of the use of both hands should be considered total and permanent disability. The court stated (syllabus):

"Loss of use of hands is total within meaning of policy, when no practical use can be made of them in doing the things ordinarily done with hands."

It was a sufficient compliance with the notice provision of the policy for plaintiff to give notice within 20 days from the time that he knew that he had lost or would lose the sight of his eye. Within a proper construction of the terms of the policy, plaintiff gave seasonable notice of his injury to the company. Not until about ten days after the accident did he or his physician realize the extent of the injury or that defendant was liable under its policy. At that time the 20 days' notice period began. Grant v. North American Cas. Co. 88 Minn. 397, 93 N. W. 312; Sheafor v. Standard Acc. Ins. Co. 170 Wis. 307, 174 N. W. 916; Watkins v. United States Cas. Co. 141 Tenn. 583, 214 S. W. 78; Peoples M. A. Assn. v. Smith, 126 Pa. 317, 17 A. 605, 12 A. S. R. 870; Midland G. & P. Co. v. Ocean A. & G. Corp. 102 Neb. 349, 167 N. W. 211, L. R. A. 1918D, 442; 55 L. R. A. p. 296. Generally, as to notice, see Sleeter v. Progressive Assur. Co. 191 Minn. 108, 253 N. W. 531, and cases cited.

We have no difficulty in concluding that plaintiff at the time of the accident was "adjusting" his automobile.

Affirmed.