[Civ. No. 12280. Second Appellate District, Division One.— March 20, 1941.]

RALPH CLARK, Appellant, v. STANDARD ACCIDENT INSURANCE COMPANY OF DETROIT, MICHIGAN (a Corporation), Respondent.

Joseph Brenner for Appellant.

Paul Nourse for Respondent.

DORAN, J.—The plaintiff in an action for indemnity under a policy of accident insurance appeals from a judgment rendered in favor of the defendant insurer, after trial by the court sitting without a jury.

The injury for which indemnity is sought under the policy was sustained while appellant was riding in an automobile, and consisted in the detachment of the retina of appellant's right eye, resulting in a decided impairment of the vision of that eye, as will hereinafter appear. Respondent admits the accidental injury and the only dispute here involved has to do with the nature and extent of the resulting loss of sight and the provisions of the policy as applied thereto. It is respondent's contention that appellant suffered the "irrecoverable and entire loss of sight of one eye" within the meaning of the policy as the applicable terms therein have been judicially construed. Prior to the commencement of this action respondent had offered to accept liability under that provision of the policy covering such a loss, which liability consisted of the obligation to pay the principal sum of the policy, namely, $1500. However, the instant action was brought to recover weekly indemnity payments under the second article of the policy providing for other accidental injuries not otherwise specifically enumerated and which disabled and prevented the insured from attending to the duties of his occupation. Judgment on that basis was demanded in the total sum of $3,370 to cover such payments to the date of the trial. The action is based upon appellant's contention that the injury to the eye was less than irrecoverable and entire loss of sight and therefore indemnity applied under the second article of the policy providing for weekly indemnity during the period of disability rather than under the first article providing for lump sum payments for certain enumerated losses, loss of sight as above defined among them.

There is no material conflict in the evidence as to the sight in appellant's injured eye. This evidence consisted largely of demonstrations of appellant's use of the eye in the courtroom and of expert testimony by qualified physicians. It appears therefrom that by the use of the injured eye alone, appellant could read printed letters or words of a size comparable to that of the large newspaper headlines, could exercise a fair degree of color perception and could distinguish

certain geometrical figures and similar objects mounted on a white background. The demonstrations of sight were made through the use of various lenses upon the eye and appellant's success in the tests given, and the difficulty encountered in the use of the eye, varied according to conditions. The expert testimony showed appellant to be possessed of peripheral vision, enabling him to distinguish objects and to read as demonstrated. The term "peripheral vision" does not mean that appellant only had side vision, but that he could see out of all but the center portion of the eye. In other words, appellant could see both directly in front and to the side by the use of the injured eye, but the sight out of that eye was obtained through the outer or peripheral portion around the center. According to the testimony of one of the experts, central vision covers an area of half an inch in diameter. The expert testimony also indicated a possibility of further improvement in appellant's vision, though the chances thereof appeared uncertain. There was also expert testimony tending to show that peripheral vision such as possessed by appellant could be of some practical use in avoiding collision with objects. While sight appeared greatly impaired, the evidence as a whole established uncontrovertibly that appellant possessed vision in the injured eye to a degree greater than mere perception of light and darkness.

The trial court found as a fact that appellant had lost the entire sight of his right eye and had sustained an irrecoverable and entire loss of sight thereof. The finding is unsupported by the evidence. It is true that it has been held that the term "irrecoverable and entire loss of sight" as used in insurance policies should be liberally construed in favor of the insured and that a person need not, therefore, be totally blind to recover indemnity as for an irrecoverable and entire loss of sight. *Pan-American Life Ins. Co.* v. *Terrell*, 29 Fed. (2d) 460; *Locomotive Engineers' Mut. Life & Acc. Ins. Co.* v. *Meeks*, 157 Miss. 97 [127 So. 702]; *International Travelers' Assn.* v. *Rogers*, (Tex. Civ. App.) 163 S. W. 421; *Tracey* v. *Standard Acc. Ins. Co.*, 119 Me. 131 [109 Atl. 490, 9 A. L. R. 521], and other numerous decisions, many of which have been cited by appellant. But the foregoing authority is of no help in the circumstances here presented, for manifestly in the absence of a necessary finding of fact supported by evidence, there can be no proper conclusion of law. If an indi-

vidual is able to see at all it cannot be said as a matter of fact that the entire sight of the eye is lost, although it might well be concluded as a matter of law that such individual would be entitled to recover indemnity as for an entire loss, because the vision had been so greatly impaired. It is obvious that the above finding of the court in the instant case, in the light of the evidence, may be regarded as no more than a conclusion of law.

The question to be here determined, therefore, is whether such a finding, without basis in the evidence, requires a reversal of the judgment.

▉ Under the liberal construction of the terms of a policy providing indemnity for irrecoverable and entire loss of sight, as above noted, the determination of loss of sight is based upon the practical use to which the injured eye may be put. (See *International Travelers' Assn.* v. *Rogers, supra*; *Pan-American Life Ins. Co.* v. *Terrell, supra*; *Murray* v. *Aetna Life Ins. Co.*, 243 Fed. 285.) Practical use does not necessarily mean use in a particular calling or occupation, but rather that use which will render practical service in respect to many needs and pleasures. (See *Murray* v. *Aetna Life Ins. Co., supra.*) While there is some authority holding that practical use is not the test, such decisions appear to be based upon a literal construction of the term "entire loss of sight". Hence, under a liberal interpretation, the loss of practical use of the eye appears to be the equivalent of the loss of the "entire" sight of the eye, as that term is used in the policy of insurance here in question. ▉ The fact that the policy provides for disabilities in addition to those specifically enumerated should not, as argued by appellant, alter the construction to be placed on the provisions for loss of sight. The terms of the policy, read as a whole, do not indicate any intention to insure against loss of sight under a construction of the term different from that which would be placed thereon if loss of sight were the only disability covered. The language of the policy indicates that under the terms thereof each enumerated loss is to be considered separately and independent of all other losses. ▉ Therefore, in the instant case, if from the evidence it can be said as a matter of law that appellant has lost the entire practical use of the injured eye, no prejudicial error has resulted from the finding of the court in question. On the other hand, if the loss of the

practical use of appellant's eye, upon the evidence presented, is purely a question of fact to be determined by the trial court, the court has failed to make a proper finding of fact upon a material issue of the case, and the court's conclusions are without proper basis. It should here be pointed out that the court did not, as contended by respondent, make a finding that appellant had lost the practical use of the eye, the only finding on the question being that noted above, which, as already seen, cannot be construed as more than a conclusion of law.

The research of the parties on this appeal covers practically every authority on the question presented. None of the cases cited, however, furnishes any authority for holding appellant, upon the facts here, to have suffered an entire loss of practical sight as a matter of law. The question is primarily one of fact, and the failure of the trial court to make a proper finding thereon constitutes prejudicial error under the circumstances. Such a finding is indispensable.

It may be noted that the failure of the trial court to make a proper finding as to appellant's loss of sight would, on the record presented, require a reversal of the judgment herein regardless of the construction placed on the terms of the policy. However, of the two possible constructions to be given the term ''irrecoverable and entire loss of sight'', the liberal interpretation above referred to appears to be more in accord with the apparent intent and purpose of the policy than a strict or literal interpretation.

For the foregoing reasons the judgment is reversed and the cause is remanded for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied April 19, 1941, and the following opinion then rendered:

THE COURT.—Respondent has petitioned for a rehearing of the cause herein, contending that the trial court made a proper finding of ultimate fact upon the issue of the loss of sight of appellant's eye and that this court has erred in holding said finding a mere conclusion of law and in holding that the trial court had failed to make a proper finding of fact upon the issue.

Respondent argues that the interpretation by the trial court of the meaning of the phrase "entire loss of sight of one eye" did not present a question of fact but purely one of law, and that it was only necessary that the court find the ultimate facts; that the court was not required to make any finding upon the issue of law as to the meaning of the policy but could reflect that finding in its findings of the ultimate fact. With this proposition there is no disagreement. The difficulty in the instant case, however, is that, in the light of the record presented and the evidence adduced, it is impossible to determine upon what theory the trial court made its finding as to loss of sight. ■■ In which regard, it should be pointed out that respondent, in its answer, affirmatively alleged in one paragraph that "the plaintiff was totally without any practical use or sight in his right eye"; and in the paragraph of its answer immediately following, respondent alleged that "the plaintiff did sustain an injury which then resulted in the irrecoverable and entire loss of sight of his right eye". Both such allegations are of ultimate fact; but it is apparent that in order to prove such allegations, the latter requires different proof than the former. The distinction between such allegations has already been made in the original opinion herein, where it is said: "If an individual is able to see at all it cannot be said as a matter of fact that the entire sight of the eye is lost, although it might well be concluded as a matter of law that such individual would be entitled to recover indemnity as for an entire loss, because the vision had been so greatly impaired." Furthermore, at the trial, respondent's counsel indicated to the court that it was respondent's contention that in order to be of practical use the injured eye must be of some practical use and benefit in the occupation in which the plaintiff was used to working. As may be seen from the original opinion herein, such a contention does not correctly reflect the law on the subject. From the finding of the court upon the issue of loss of sight, it is impossible to say that the trial court in considering the evidence did not adopt the view advanced by respondent, and, if this were so, the finding was based upon an erroneous theory of law. From all that appears herein, the finding in question might have been based upon any one of three grounds: 1. That appellant was in fact totally blind in the injured eye; 2. That appellant had lost the practical

use and benefit of the eye in his occupation; and 3. That appellant had lost the practical use and benefit of the eye in his daily life. It was for the trial court in making its findings to set forth the ultimate facts with sufficient particularity as to show the grounds upon which its judgment rested. (*Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal. App. 135 at 137, 138 [191 Pac. 968].)

The pleadings herein presented two questions of ultimate fact to be answered by the trial court; first: Had appellant actually lost the entire sight of the eye; and, second: If appellant had not actually lost the entire sight of the eye, had the vision been so greatly impaired as to destroy practical use of the eye? The evidence did not support an affirmative finding upon the first issue, and the trial court failed to make any finding upon the second.

The authorities cited by respondent upon the question stand for no more in that respect than the proposition that findings need be of ultimate fact only and may be couched in the language of the pleadings where the pleadings sufficiently state the ultimate facts. A few of respondent's authorities, notably *Miller* v. *Gusta*, 103 Cal. App. 32 [283 Pac. 946], directly support the view taken by this court and the contentions of appellant.

It may be well to state here, also, that in view of the undisputed evidence of the existence of peripheral vision in the injured eye, whether practical use of the eye has been lost presents a very close question. (See *Powers* v. *Motor Wheel Corporation*, 252 Mich. 639 [234 N. W. 122, 73 A. L. R. 702].) However, where questions of this nature arise, their determination depends so much upon the facts of each individual case that it would create a dangerous and undoubtedly harsh precedent to establish, as a rule of law, that the existence of peripheral vision in every case constituted existence of practical use of eyesight.

The petition for rehearing is denied.

Respondent's petition for a hearing by the Supreme Court was denied May 15, 1941.