**41708. GEORGIA LIFE & HEALTH INSURANCE COMPANY v. SEWELL, by Next Friend.**

ARGUED JANUARY 10, 1966—DECIDED APRIL 5, 1966.

444

*A. S. Skelton, Erwin, Birchmore & Epting, Eugene A. Epting,* for appellant.

*Joseph D. Skelton, McClure, Ramsey & Struble, Robert B. Struble,* for appellee.

*Heard & Leverett, E. Freeman Leverett,* for parties at interest not parties to record.

BELL, Presiding Judge. ■ Defendant enumerates error upon the following portion of the court's charge to the jury: "If you should find from all the evidence that for all practical purposes, the plaintiff,. Alvin Ray Sewell, has lost the entire sight in his left eye, then this shall amount to the loss of the entire sight of one eye as set forth in the policy." The question presented is of first impression in Georgia although decisions on the point are available from other jurisdictions.

To recover under a policy provision of the kind in question, loss of sight in the literal sense of absolute blindness is not necessary. Jensvold v. Provident Life &c. Ins. Co., 191 Minn. 122 (253 NW 535, 537); Locomotive Engineers' &c. Ins. Co. v. Meeks, 157 Miss. 97 (127 S 699, 702).

In Locomotive Engineers &c. Ins. Assn. v. Vandergriff, 192 Ark. 244 (91 SW2d 271, 273), the Supreme Court of Arkansas stated: "It is manifest, when we abandon sophistry and indulge in plain thinking, that where one has no practical use of his eyes he is blind, and the ordinary person having a policy such as the one in the instant case would think that he was insured against blindness—so he is. 'The ability to perceive light and objects but no ability to distinguish and recognize objects is not sight, but blindness.' This, all men know. It would be unfair to the association to impute to it the intention . . . to base its liability upon the frivolous distinction between the power to perceive objects in any character of light without the ability to distinguish one object from another, and that totality of blindness which would make complete darkness." See also: Murray v. Aetna Life Ins. Co., 243 F 285 (DC Mont.); Zurich &c. Ins. Co. v. McDaniel, 192 Ark. 898 (95 SW2d 896, 897); Tracey v. Standard Accident Ins. Co., 119 Me. 131 (109 A 490, 494, 9 ALR 521).

The words "loss of entire sight" in policies similar to the one here have been interpreted, with few exceptions, to mean loss of

practical use of sight rather than literal blindness. In addition to the foregoing cases, see: Pan-American Life Ins. Co. v. Terrell, 29 F2d 460 (5th Cir.); Clark v. Standard Accident Ins. Co., 43 Cal. App. 2d 563 (111 P2d 353, 355); Travelers' Protective Assn. v. Ward, 99 Ind. App. 97 (187 NE 55, 57); Continental Casualty Co. v. Linn, 226 Ky. 328 (10 SW2d 1079, 1083); Mulcahey v. Brotherhood of Railway Trainmen, 229 Mo. App. 610 (79 SW2d 759, 765); Brinson v. Old Republic Life Ins. Co., 247 N. C. 85 (100 SE2d 246); International Travelers' Assn. v. Rogers, 163 SW 421, 423 (Tex. Civ. App); Ann. 87 ALR2d 481, §§ 3, 9. Contra, Gilliland v. Order of R. Conductors, 216 Ala. 13 (112 S 225); Bolich v. Provident Life &c. Ins. Co., 205 N. C. 43 (169 SE 826, 828).

Construing "loss of entire sight," as we do, to mean the entire loss of *practical* use of sight, it follows that the instruction complained of was a correct and applicable principle of law. Similar instructions were approved in Murray v. Aetna Life Ins. Co., supra; Continental Casualty Co. v. Linn, supra; and International Travelers' Assn. v. Rogers, supra.

■ The only question for consideration on the general grounds is whether the evidence authorized a finding that plaintiff's injury resulted in "loss of the entire sight" of plaintiff's left eye within the meaning of those terms discussed in Division 1.

The evidence showed that plaintiff had completely lost the central vision of his left eye, but that some peripheral vision remained. Plaintiff testified that with his left eye he could distinguish between dark and light, but could not see the blackboard even when sitting on the front row at school, could not read "the regular print" of any textbook, and could not watch "movies" or television with his left eye. If plaintiff closed his right eye while playing ball he "would not be able to see the ball at all." While on the witness stand plaintiff placed a patch over his right eye, and testified that he could see his attorney's white shirt and the outline of the attorney's shoulders, but answered in the negative when the attorney asked, "Can you see who I am?" When asked how many fingers the attorney was holding up, the witness guessed, "About three." At the time,

the attorney was standing about six feet from plaintiff and holding up four fingers.

On cross examination, plaintiff testified that with his right eye closed he could see "just images" with his left eye. Without looking in their direction, he was able to see two or three men in the jury from the side of his eye, but was unable to see the windows in the courtroom. Still using only his left eye, he identified the color of a blue paper held about five feet in front of him. He also answered in the affirmative when asked if he could see his attorney and his mother from the corner of his eye, but on redirect examination it appeared that he was not able to recognize and identify the people he saw.

A physician testified on behalf of plaintiff: "He was not able to focus on anything with that eye. In other words, he had lost his central vision. He could make out objects to the side, but that was about the limit. . . It would be difficult to identify objects with just peripheral vision unless you were familiar with that object. Of course, it is an aid to preventing blows or injuries because when you see something moving in the periphery point of vision, you blink and protect yourself. . ."

The latter evidence of the usefulness of peripheral vision was simply a general statement of medical fact, which did not establish that the particular plaintiff had sufficient peripheral vision to be of practical use to him. The existence of some peripheral vision will not in every case constitute practical use of eyesight; this must be left for determination upon the evidence in each individual case. Clark v. Standard Accident Ins. Co., 43 Cal. App.2d 563 (112 P2d 298, 299).

In addition to the testimony given by plaintiff the record shows that at his attorney's direction he attempted to reach out and grasp a book handed him by the attorney and that he demonstrated his ability to walk a short distance in the courtroom, using only his left eye. But the record does not show whether his step was sure-footed or stumbling and awkward or whether his reach was certain and confident or searching, groping and fumbling. These things the jury saw.

The evidence in this case was sufficient to authorize a finding that plaintiff did not retain enough sight in his left eye to be of

practical use and benefit to him and that he had thus suffered "loss of the entire sight" of that eye within the meaning of the terms of the policy.

*Judgment affirmed. Jordan and Eberhardt, JJ., concur.*